


# RICHMOND POLICE DEPARTMENT
# GENERAL ORDER

| Subject: **OUTSIDE (EXTRA-DUTY AND OFF-DUTY) EMPLOYMENT** | Chapter 4 | Number 6 | # Pages 17 |
|---|---|---|---|
| References:<br>CALEA: 3.1.2, 22.2.4, 22.2.5a, 22.2.5b, 22.2.5c, 22.2.5d, 22.2.5e, 61.3.3<br><br>VA State Code: §46.2-812 | Related Orders: 2-3 | **Effective Date: 04/14/2022**<br>**Revised By: Standard**<br>**Prv. Rev. Date: 04/27/2020** | |

Chief of Police: *Gerald M. Smith* (signature)

## I. PURPOSE

The purpose of this directive is to set forth guidelines to govern outside employment by civilian and sworn members of the Richmond Police Department.

## II. *SUMMARY OF CHANGE*

*This revision provides changes from the word: contract to written agreement, set forth by updated CALEA standards. Work restricted hours have been changed from 16.5 to 16.0 in a 24-hour period. All changes have been bold and italicized throughout the document.*

## III. POLICY

The Richmond Police Department will permit employees to work approved outside employment that does not present a conflict of interest; does not violate any rules, regulations or procedures; and does not impair the employee's job performance. The Outside Employment Coordinator shall be assigned to the Special Operations Division. All outside employment will be coordinated and/or maintained by the Outside Employment Coordinator. Working outside employment is a privilege that can be revoked at any time by the Chief of Police or designee. Employees who do not abide by these policies and procedures may have the privilege of working outside employment revoked in addition to any other sanctioned disciplinary process. [CALEA 22.2.5c]

## IV. ACCOUNTABILITY STATEMENT

All employees are expected to fully comply with the guidelines and timelines set forth in this general order. Failure to comply will result in appropriate corrective action. Responsibility rests with the Division Commander to ensure that any violations of policy are investigated and appropriate training, counseling and/or disciplinary action is initiated.

This directive is for internal use only, and does not enlarge an employee's civil liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense, with respect to third party claims. Violation of this directive, if proven, can only form the basis of a complaint by this Department, and then only in a non-judicial administrative setting.

V. <u>DEFINITIONS</u>

   A.  OUTSIDE EMPLOYMENT – The provision of a service, whether or not in exchange for a fee or other consideration, which is outside the normal job for which an individual is employed by the City. There are two types of outside employment – "extra-duty" and "off-duty". [CALEA 22.2.4]

      1.  Extra-Duty Employment - Any outside employment that is conditioned on the actual or potential use of law enforcement powers by the employee. There are two types of extra-duty employment:

         a)  Private *written agreement* – The employer enters into a written agreement that requires the employer to handle all payroll issues and make payments directly to the officer. There are three classifications of private *written agreements*:

           (1)  Single event (aka short term event) – an event requiring fewer than 25 officers and continuing for a period of four weeks or less. Single events will be coordinated by the Outside Employment Coordinator and posted on the Extra-Duty Billing (EDB) System.

           (2)  On-going/ small event – jobs continuing for more than four weeks, have an assigned Job Coordinator and have ten or fewer officers in the eligibility pool.

           (3)  On-going//large event –jobs continuing for more than four weeks, have an assigned Job Coordinator and may utilize more than ten officers in the eligibility pool.

           Note: Eligibility pools for these jobs must be developed following the "Fairness Rotation" selection procedures outlined in this policy.

         b)  Special Event *written agreement* – The requestor enters into a written agreement to directly reimburse the City of Richmond for expenses incurred relating to the event<u>.</u>

           (1)  A "Special Event" is defined as an organized event designed to attract participants or spectators, or both, and requiring more than 25 officers.

           (2)  Officers working special events will be paid through RPD payroll and the City will seek reimbursement from the requestor.

         c)  City *written agreement* - When another city department is the employer and makes payments to the officer through their department's payroll. Officers will be compensated at the time and half rate.

           NOTE: Voter's Registrar Assignments will be paid at the Extra-duty rate.

      2.  Off-Duty Employment – Any outside employment wherein the use of law

enforcement powers is not anticipated.

NOTE: Any self-employment, volunteer or bartered work that involves the actual, potential or implied use of law enforcement powers will be treated as "extra-duty Employment" and will be worked by sworn personnel only. School Guards and Support Officers will be permitted to work extra-duty employment as it relates to Traffic Control Assignments. Otherwise, it will be treated as "off-duty Employment", which can be worked by sworn and civilian personnel. Off-Duty Employment will not anticipate potential use of law enforcement powers.

B. ELIGIBILITY POOL – This is the group of officers that has received authorization to work extra-duty employment. All Job Coordinators will staff jobs only with officers in the assigned "pool". The Fairness Rotation selection will be conducted by the Outside Employment Coordinator. Officers assigned to a pool are subject to call-back for that job pool. Officers will submit their monthly dates to the Job Coordinator. The Job Coordinator will utilize the Fairness Rotation when developing the monthly schedules. Officers that are consistently unavailable to work dates in the pool in which they are assigned, will be removed by the Outside Employment Coordinator and replaced by the next person on the waiting list for that pool. Officers that are removed from the pool will no longer be authorized to work the job in which he/she was removed. The Chief of Police or designee may require additional supervisory support as needed.

C. EXTRA-DUTY BILLING (EDB) – This is the web-enabled computer program that houses all extra-duty employment records. Employees will be able to view <u>all</u> extra-duty assignments, as well as submit a request to work outside employment for short term jobs.

D. FAIRNESS ROTATION SELECTION – The Extra-Duty Billing System will allow a period of time as designated in the announcement for personnel to request the job in the system. After the period has ended, the Outside Employment Coordinator will utilize the Extra-Duty Billing System program's "Fairness Rotation." The computer program will place the request of officers in order based on the fairness criteria. The fairness criteria will be based on how many jobs the officer is currently assigned to work, and when the Officer last worked.

E. INITIAL TRAINING PERIOD – The period of time a police recruit is under employment restrictions. This period ends one year after the employee's graduation from the basic police academy.

F. COORDINATORS

1. Outside Employment Coordinator (OEC) – City of Richmond law enforcement officer designated by the Chief of Police to administer the Services provided by Officers pursuant to employers/requestors. [CALEA 22.2.5d]

2. Job Coordinator – City of Richmond law enforcement officer responsible for assisting the OEC with scheduling and timekeeping for the officers working for a particular employer. The job coordinator shall be assigned by the OEC for a particular job. Job Coordinators shall schedule only officers that are authorized in the eligibility pool for that job and follow procedures described in this policy. Job Coordinators will be required to enter the monthly schedules for their job pool no later than the 15th of the month that proceeds. Any changes to the calendar must be sent to the Outside Employment Coordinator within 5 business days.

    3. Site Supervisor – Provides supervision at the job site and follows procedures described in this policy

    4. Lieutenant and Above – Job coordinator for all large facilities and events requiring ten or more officers at any given time.

    5. Captain and Above – The job coordinator position for the Richmond Coliseum, Center Stage and Convention Center will be the rank of Captain and above.

    Note: The job coordinator position for the aforementioned and any other special event or vendor shall be designated at the discretion of the Chief of Police or appointed designee.

VI. **PROCEDURE**

    A. Responsibilities: [CALEA 22.2.5b]

Officers should be aware that outside employment is a privilege granted to employees. The Department may prohibit any and all officers from working in an outside capacity, particularly if such employment is detrimental to the Department. All officers must receive final approval from Outside Employment Coordinator prior to working any Outside Employment.

    1. In order to be eligible for outside employment, a police employee must be in good standing with the Department and have received at least a satisfactory rating on his/her last employee performance evaluation. Any employee who has an annual performance rating of less than "Satisfactory" shall be prohibited from working extra-duty for 12 months. Continued departmental approval of an employee's outside employment is contingent on such good standing. The Officer-In-Charge (OIC) of the Personnel and Recruitment Unit is responsible for notifying the Outside Employment Coordinator of any unsatisfactory performance evaluations.

    2. The Disciplinary Review Officer (DRO) shall notify the Outside Employment Coordinator of any disciplinary actions precluding an employee from working outside employment.

    3. The vendor is responsible for notifying the Outside Employment Coordinator of any cancellations.

    4. The Outside Employment Coordinator is responsible for the replacement of personnel for assignments.

    5. Employees shall ensure their ability to perform (their regular work duties) and the quality of their work will not be adversely affected by any outside employment.

    6. Police personnel shall be limited to 5 job pool assignments at any one time.

    7. Personnel performing any type of outside employment are subject to Department Policies (General Orders and Executive Orders), City Administrative Regulations and City Personnel Rules.

    8. Permission for a police employee to engage in outside employment may be revoked if it is determined that the employment is not in the best interest of the Department. Upon request, the Chief of Police or designee will review revocations. [CALEA 22.2.5a, 22.2.5c]

9. Unsatisfactory performance while engaged in outside employment may result in departmental sanctions as well as the employee or officer being restricted from all outside employment. The Outside Employment Coordinator, the Job Coordinator or Site Supervisor will investigate and take the appropriate action. The Job Coordinator or Site Supervisor must submit the findings of their investigations in writing to the Outside Employment Coordinator for filing. Unsatisfactory performance includes, but is not limited to:

    a) Unexcused tardiness

    b) Failure to report for duty, after being notified that the officer has been assigned a job through the POSS Extra Duty Billing System

    c) Improper performance or failure to perform the duties for which hired, (to include violations of departmental policies)

    d) Unnecessarily congregating with others

    e) Failure to follow instructions of site supervisor

    f) Failure to follow radio procedures as designated in this policy.

    g) Failure to modify and submit Extra-Duty Job Assignment Notification Report when necessary

    h) Failure to submit the monthly Extra-Duty Activity Report.

10. Any police officer engaged in outside employment is subject to being called back to work in case of an emergency. If so, he/she is expected to return to duty, regardless of prior outside employment arrangements.

11. Any officer engaged in extra-duty employment shall adhere to the body worn camera requirements set forth in General Order 01-20.

12. Any officer engaged in extra-duty employment that is injured or who uses force in any manner must report that fact to an on-duty precinct supervisor immediately. All departmental procedures will then be followed. If the assignment has an extra-duty supervisor, that individual should, if feasible, compile all necessary paperwork.

13. Any arrest made while off-duty must be reported to an on-duty supervisor. Court dates for arrests made while off-duty must be set on the officers assigned court dates.

14. In the event multiple vendors (enter into a *written agreement* with employers) (i.e. multiple apartment complexes; multiple restaurants), collectively *written agreements* to hire an officer(s) for a specific assignment, a signed memorandum of understanding will accompany the *written agreement* to ensure all parties are aware of stipulations or guidelines set in place for the particular job being that several vendors/employers are involved in the *written agreement* service.

15. Employment rights of personnel working either extra-duty or off-duty employment under a *written agreement* to provide law enforcement services are not to be abridged by the Richmond Police Department. Providing such services under a *written agreement* should not be the basis for penalty, nor should it threaten employment rights, promotional opportunities, training opportunities, or

other benefits.

*[CALEA 3.1.2]*

B. Regulations:

The following regulations are applicable to all outside employment.

1. Conflict of Interest - Outside employment will not be permitted if it constitutes a conflict of interest.  Examples of some conflicts are:

    a) A bail bondsman or bounty hunter, a process server, repossessor, bill collector, towing of vehicles, or any other employment in which police authority might tend to be used to collect money or merchandise for private purposes;

    b) Personnel investigations for the private sector or any employment, which might require the employee to have access to police information, files, records or services as a condition of employment;

    c) Any job in police uniform, requiring the performance of tasks other than that of a police nature;

    d) Assistance (in any manner) in case preparation for the defense in any criminal or civil action or proceeding;

    e) Employment by a business or labor group involved in a labor dispute or strike;

    f) Outside Employment while a police recruit is undergoing phase training constitutes a direct conflict of interest to the Training and Development Unit's mission to prepare individuals for Entry-level Law Enforcement.

2. Status and Dignity - Outside employment will not be permitted if it constitutes a threat to the status or dignity of the police as a professional occupation.  Examples of some threats are:

    a) Establishments that sell pornographic items, or provide entertainment or services of a sexual nature.

    b) Any gambling establishments not exempt by law.

3. Work Hour Restrictions:

    a) Employees may not engage in patrol overtime or outside employment (on-duty, extra-duty, off-duty or any combination of these statuses) for more than *16.0* hours in any consecutive 24 hours.

    b) According to Code of Virginia Section § 46.2-812, no officers will work any combination of jobs that will cause them to drive a vehicle for over 13 hours in any consecutive 24 hours.

    c) Department members must have at least eight hours rest during the 16 hour period prior to reporting to their regular Department assignment.

    d) No member of the Department shall work any combination of on-duty, patrol overtime, off-duty or extra employment totaling more than seventy-six (76) hours within a 7 day period without prior approval from the Outside Employment Coordinator. The only exception will be due to primary job related emergency and due to court overtime.  For the purposes of

      calculating the seven day total, the seven days will begin at midnight on Saturday and end at 2359 hours on Friday.

    e) Employees may not work a combined total of more than 144 hours of patrol overtime, off-duty or extra employment in any consecutive four-weeks. This includes hours worked while on vacation, compensatory, and other leave. The only exceptions will be for work performed due to a primary job related emergency and due to court overtime or with prior approval from the Outside Employment Coordinator.

4. General Restrictions:

    a) Any employee may be required to discontinue outside employment if such outside employment activity or enterprise interferes with the employee's performance, attendance, and promptness, ability to work overtime or ability to work emergency hours.

    b) Police recruits, shall not work "Outside Employment" in any capacity during their initial training period.

    c) Police officers on probation are prohibited from working extra-duty to include extra-duty for private concerns. Police officers on probation may work department sponsored overtime (special initiatives, special assignments, patrol overtime, etc.) with the approval of the immediate supervisor. A supervisor should grant such approval only after he/she is sure the probationary officer has clearly demonstrated the ability to work without close supervision or guidance. This approval will be in writing and forwarded to the Training and Development Unit and a copy must be forwarded to the Outside Employment Coordinator for their file.

    d) Lateral Officers with three (3) or more years prior law enforcement experience who are on probation must receive approval by his/her immediate supervisor to work extra-duty after the officer has displayed proficiency in his current assignment. The approval must be in writing and forwarded to the Chief of Police through channels. An approved copy must be forwarded to the Outside Employment Coordinator. This approval will be in writing and forwarded to the Training and Development Unit and a copy must be forwarded to the Outside Employment Coordinator for their file.

    e) No supervisors will be allowed to work the same employment, at the same hours and be supervised by an employee of a lower rank even if the lower rank person coordinates the extra-duty employment. The Site Supervisor will always be the highest ranking officer working the event.

    f) Captains and above shall not engage in extra-duty employment without the specific approval of the Chief of Police.

    g) Employees that are Immediate Family members as defined in General Order 2-3, "Assignment and Supervision of Family Members" are restricted from working extra-duty employment at the same working hours to include supervision of the family member during extra-duty employment.

h) The wearing of plainclothes during any extra-duty employment is prohibited without direct written approval of the Chief of Staff. Assignments will be performed in Class A or B uniform with all issued equipment. ALL protective details should be referred to the OIC of Special Operations Division. All plainclothes requests must be made to the Outside Employment Coordinator no less than 30 days prior to the assignment date.

i) While Investigative assignments may have permission to wear beards and goatees while in plainclothes, these officers must conform to the policy on grooming for uniformed officers while in uniform.

j) Employees shall not engage in any outside employment during on-duty hours. This includes the sale of products, consulting, or scheduling appointments to meet with customers.

k) Employees who are on injury leave shall not engage in off-duty or extra employment. Employees who are on leave without pay, light duty, have had their police powers suspended or on military leave or are on a probationary status may not engage in extra-duty employment or Department scheduled overtime.

l) Employees who are not prohibited from working beyond the physician recommended light duty status may engage in department scheduled overtime for any positions: 1) that does not require the use of sworn police powers and 2) as long as the employee has the requisite skills required by the position.

m) Employees who are on light duty may be restricted from off-duty employment depending upon the nature of the injury, the nature of the restrictions placed upon the employee for medical reasons and the nature of the off-duty employment.

n) The determination of whether an employee on light duty may engage in off-duty employment will be made on a case by case basis by the Major of the affected service.

o) Whenever an employee utilizes leave other than Vacation or Compensatory Leave, he/she is prohibited from working any outside employment for a 24-hour period, e.g., an officer working 2100 –0700 shift calls in sick, the officer is then prohibited from working any outside employment until 2100 hours the next day. Any employee who will miss an extra-duty assignment due to illness must contact the Outside Employment Coordinator (or the job coordinator) and the employer no less than one-hour before the assignment.

p) No employment outside the City limits for the purpose of law enforcement is allowed without prior approval from the Chief of Police or designee.
[CALEA 22.2.5]

q) No employee will work any job for cash or other consideration such as reduction or waiver of rent for Police services.

r) A City employee may not use his/her City position as a referral for outside employment. An example of abuse would be a police officer referring the victim of a burglary to the officer's self-employed business for installation of new locks or an alarm system.

- s) City equipment, facilities, vehicles and supplies cannot be used as a support mechanism for employees relating to any outside employment, except with the written approval of the Outside Employment Coordinator. Vehicles that are a part of the "Take Home Marked Vehicle Program" may be used for travel to and from the destination only. This does not include standard uniform and equipment, (i.e. weapon, handcuffs and radio.) Vehicles, horses, bicycles, motorcycles, etc. may be approved if they provide a significant benefit to the Department. Any officer who utilizes the usage of city equipment, facilities, vehicles and supplies without approval will be subject to suspension of extra-duty privileges for a period of 30 days.

- t) The Department reserves the right to charge a fee to be set by the Chief of Police for the use of specialty police equipment (i.e. Police motorcycles, vehicles, horses, etc.) If an additional fee is charged, a usage log must be maintained. Job Coordinators will be required to submit the usage log to the Outside Employment Coordinator by the 5th of the month that follows the usage of the specialized equipment (i.e. the PD-167 will be completed by Job Coordinator for Marked Vehicle usage for extra duty employment.)

- u) No Department member will be permitted to work in an establishment where "on premise" alcoholic beverages are sold, regardless of the type of employment.

  Exception: Certain establishments may be approved for officers to work the exterior of a business with a valid ABC license. Officers will respond to the interior only in response to a call for assistance and only for the time needed to handle the incident. This does not include special events sponsored by the City and/or City facilities with the approval of the Outside Employment Coordinator.

- v) Any pay dispute must be brought to the attention of the Outside Employment Coordinator before any legal action is taken by an employee.

- w) Officers involved in the department's "Take-Home" program will not park their official department issued vehicle after work hours at locations other than their residence, as a deterrent, without being physically on-site.

- x) Probationary Police Officers are prohibited from working extra-duty for private concerns.

C. Administration:

1. The Richmond Police Department's Extra-Duty Billing System:

    a) The Richmond Police Department's Extra-Duty Billing System will be the official depository for all outside employment data. This will include employee and employer records. The Department's Outside Employment Coordinator will maintain and administer the system.

    b) All officers will have access to this system via Department computers. Officers should refer to the Extra-Duty Billing System user guide for navigation instructions.

    c) The Department must approve all outside employment. All jobs listed on the Extra-Duty Billing System have been approved. If a job is not listed in

        the Extra-Duty Billing System, it should be assumed it has not been approved and cannot be worked. It is the officer's responsibility to check the Extra-Duty Billing System to ensure a job is approved. Any officer who works a job that is not approved can be suspended from working off-duty for a period up to 12 months by the appointing authority.

    d)   All "single event" jobs will be posted on the Extra-Duty Billing System and coordinated through that system. The system will allow all officers to view and immediately sign-up for posted short-term jobs. Officers that are assigned short-term jobs through the Extra-Duty Billing System are approved electronically and do not need to submit a Secondary Employment Request, but must complete an Extra-Duty Job Assignment Notification Report if the actual hours worked are modified.

2.   Job Coordinators:

    a)   The Outside Employment Coordinator will determine which off-duty jobs require a coordinator. If a job qualifies for a coordinator, the Outside Employment Coordinator will assign one after posting the assignment. The Outside Employment Coordinator will give priority consideration to Supervisors when Job Coordinator assignments are given.

    b)   Police personnel, at any given time, shall only hold up to three (3) Job Coordinator positions. Captains and above will be limited to one (1) Job Coordinator position.

    c)   Job Coordinators will be responsible for the smooth operation of the off-duty assignment. Responsibilities will include the scheduling of officers, ensuring all paperwork is current and that all policies and procedures are followed. Job Coordinators must enter the monthly schedule of officers in the Extra-Duty Billing System no later than the 15th of the month that proceeds or as soon as the job becomes available for random assignments (i.e. June's calendar is due on the Extra-Duty Billing System no later than May 15th). Any changes to the calendar must be sent to the Outside Employment Coordinator as soon as practical. Failure to timely enter job assignments in the Extra-Duty Billing System will result in replacement of the Job Coordinator.

    d)   An employer may request that a particular officer be the job coordinator. Such requests will be taken into consideration but will not be binding.

    e)   If an individual officer is approached by a business, organization or individual and asked to be their coordinator, the officer must make written application to the Outside Employment Coordinator. Preference shall be given to officers securing new job sites for the Job Coordinator position.

    f)   Job Coordinators will be compensated 1 hour per week at the supervisor's rate in addition to any hours worked. When scheduling does not occur during a particular week, compensation will not be required to the Job Coordinator.

    g)   Job Coordinators are not employment agents and will not receive additional payments from an employer other than the compensation stated in this order.

       Employees shall not profit or attempt to profit from the off-duty work of any other employee of the Department.

3. Selection Process:

   a) "Single Events" – Single event jobs will be posted on the Extra-Duty Billing System and are open to all officers. The Extra-Duty Billing System will select an officer based on the officers requesting the job and the system's Fairness Rotation selection process. All cancellation of "Short Term Single Events" jobs must be made to the Outside Employment Coordinator.

   b) No cancellations will be granted within 5 business days of the event unless approved by the Outside Employment Coordinator.

   c) "On-Going/Large" and "City *written agreement*" Jobs:

      (1) These jobs will have a coordinator assigned. The Job-Coordinator will, as vacancies become available, request advertisement of vacancies of the job to the Outside Employment Coordinator. This notice will list job specifications and indicate the number of officers needed to fill the "employee pool" for that job. The Outside Employment Coordinator will advertise any vacancies that exist in the "Job Pool".

      (2) Officers interested in working a particular job pool will notify the Department's Outside Employment Coordinator by request through the POSS Extra Duty System.

      (3) If the Outside Employment Coordinator gets more applications than there are positions in the pool, the Outside Employment Coordinator will keep a waiting list of all those who have applied and utilize the fairness rule to select the next available candidate as vacancies become available. The waiting list will be utilized for a period of one calendar year.

      (4) Once the "pool" of officers is developed, the Job Coordinator will be required to distribute jobs equally among those officers. The Job Coordinator will utilize the Fairness Rotation process by utilizing the Extra-Duty Billing System. Any future vacancies will be filled by the Outside Employment Coordinator, giving preference to any employee who had applied for the pool but was not selected.

4. Approval/Paperwork Requirements:

   a) PD-12A, Outside Employment Requests (OER):

      (1) The PD-12A is required in the following circumstances:

         (a) "Long Term/On-going" jobs.

         (b) "Short-term" jobs that are being coordinated by an officer not using the Extra-Duty Billing System will require the submission of a PD-12A.

         (c) Off-Duty employment and self-employment requires the submission of a PD-12A.

    (d) Volunteer work where the actual or potential use of law enforcement powers exists will require a PD-12A.

 (2) The PD-12A form must be completed by the requesting officer and routed through the Unit OIC for initial approval and forwarded to the Outside Employment Coordinator for final approval.

 (3) No PD-12A form is required for "Short-term" jobs procured through the Extra-Duty Billing System. These jobs will be administered through the Extra-Duty Billing System and approvals will be done electronically.

 (4) The PD-12B Form must be completed by the requesting Captain and above and routed through the Chief of Police for approval. Approved copy will be forwarded to the Outside Employment Coordinator.

  NOTE: No officer is permitted to work any outside employment until an approval has been received from the Outside Employment Coordinator (electronically, verbally, or by hard copy of the PD-12A). In emergencies, the Night Supervisor or Area Watch Commander may grant temporary approvals. Any officer that works outside employment without approval will be suspended from working extra-duty for a period of up to one year.

b) Request for Extra-Duty Police Officers (PD-12):

This form is used to capture information on employers for later input into the Extra-Duty Billing System. The form can be submitted by the employer or an officer submitting it on behalf of the employer.

c) Extra-Duty Job Assignment Notification Report and Extra-Duty Activity Report:

 (1) The Extra-Duty Job Assignment Notification Report will be sent to the assigned officer by the Extra-Duty Billing System. The employee is required to verify actual hours worked. Personnel who need to make modifications to the actual hours worked on a particular assignment are required to make corrections on the Job Assignment Notification form and forward the form to the Outside Employment Coordinator.

 (2) The Extra-Duty Activity Report is a report submitted monthly by personnel that work extra-duty employment. The employee is responsible for printing and submitting this report after verifying actual hours worked during the month covered by the report. The employee will be required to sign the Extra-Duty Activity Report and to submit it to his/her immediate supervisor with required signature by the 10th of each month following the respective month. Failure to submit the Extra-Duty Activity Report can result in suspension of the officer's privilege to work extra-duty employment.

 (3) The immediate supervisor will be responsible for reviewing, signing and forwarding the extra-duty Activity to the Outside Employment Coordinator by the 15th of each month following the respective month.

e) Overtime or Off-Duty Report (PD-57):    [CALEA 22.2.5e]

(1) Employees that work off-duty employment must submit the PD-57 within 5 days after the month has ended and forwarded to the employee's immediate supervisor for signature. Supervisors should forward all PD-57 forms to the Outside Employment Coordinator by the 10th of each month.

(2) Employees must sign the PD-57 certifying the information is true, accurate, and complete.

(3) Employees who fail to submit the PD-57 will face disciplinary action including restriction of off-duty privileges.

f) Employment Agreements (PD-119's): [CALEA 61.3.3]

All extra-duty employment requires an executed Employer Written Agreement for Extra-Duty Police Officer (PD-119-OE, PD-119-SE, PD-119-SPE, PD-119a or PD-119b) to be submitted. The Department's Outside Employment Coordinator will deliver the employment *written agreement* to the potential employer in person, or by mail, email or facsimile. The Department's Outside Employment Coordinator shall ensure that the employer clearly understands the form before it is executed and officers are permitted to work. The Outside Employment Coordinator will execute the PD-119's on behalf of the Police Department.

g) Distribution and Filing:

(1) The Outside Employment Coordinator will maintain hard copy files as back up to computer files for PD-12, PD-12A & B and PD-119-SE, PD-119-OE, PD-119-SPE, PD-119a and PD-119b forms.

(2) The Outside Employment Coordinator will ensure that City Administrative Regulation #5.5 is met.

5. Requests for Off-Duty Police Services:

a) All businesses, organizations or individuals requesting the services of extra-duty police officers must make a request for these services to the Outside Employment Coordinator within 5 business days to the event.

b) Police employees may obtain information from a requesting business. This information should be recorded on a "Request for extra-duty Police Officers" (PD-12) and forwarded to the Department's Outside Employment Coordinator.

c) In emergency cases, the Night Supervisor or Area Watch Commander may temporarily approve off-duty employment requests and may execute the PD-119 on behalf of the Department. All emergency approvals must be forwarded to the Outside Employment Coordinator within 24 hours of the incident.

d) All employers must submit a signed "Employment *Written* Agreement" (applicable PD-119) form before a request can be processed and any officer(s) assigned. No officer may work for an employer who has not executed the applicable PD-119.

6. Compensation:

   a) The Chief of Police will set the rate of pay for extra-duty Richmond Police Officers. The rate of pay for department extra-duty employment will be calculated at approximately one and one half times the base hourly rate for a Police Officer I at pay step #1 or higher as ordered by the Chief of Police. On site supervisors' pay rates will be three dollars above the extra-duty base rate unless a different rate is ordered by the Chief of Police. Command Officer's pay will be six dollars above the extra-duty base rate unless a different rate is ordered by the Chief of Police. These rates will be posted via Executive Order.

   b) Whenever another city agency is the employer, the employee must be paid at his/her OVERTIME RATE through the agency's payroll.

   c) All extra-duty employment will be compensated at the appropriate pay rate. Individual officers will not negotiate pay rates.

   d) Employers of extra-duty officers will be required to pay time and one half the assigned officer(s) hourly rate(s) on all legal City of Richmond holidays and New Year's Eve. This includes functions at City owned facilities, as well as other employers.

   e) Employers will be required to compensate officer(s) a minimum of four hours, even if the assignment is of a shorter duration.

   f) If officers remain on assignment longer than originally agreed upon according to the *written agreement*, the employer will compensate each officer a full hour pay for any portion of an hour worked beyond 15 minutes.

   g) Employees can pick up their check following their assignment during normal business hours at the office of the Outside Employment Coordinator. If additional payment arrangements have been made, the Outside Employment Coordinator will post this with the announcement notice.

   h) Employers will pay either by certified check or money order. If standard deductions are not withheld, the employer will follow all appropriate Federal and State tax-reporting requirements. Short-term extra-duty employment will require employers to submit certified funds at least 24 hours prior to their requested assignment, unless prior approval has been granted by the OEC.

   i) All employees will report all earned income to the proper entities.

7. Supervision Requirements:

   a) Supervisors shall review overtime hours daily to ensure employees do not work more than *16* hours in any consecutive 24 hour period. With the only exception for primary job related emergencies and court overtime. If found in violation, the Commanders shall exercise the necessary disciplinary actions needed to correct this behavior.

   b) Whenever more than two and less than five police officers are employed extra-duty, at least one officer must function and be paid as an event supervisor and will function as the point of contact for the event.

    c)    1 to 4 officers = no supervisor required; 1 officer will act as a supervisor and will be compensated as a supervisor when there are Organizations employing five or more officers at the same time, at the same site, will be required to hire at least one first-line supervisor in addition to the five officers.  The first line supervisor will provide direct supervision of the assigned officers.  An additional supervisory officer shall be required for each multiple of five patrol officers assigned to such sites.  A Command Officer will be required for assignments that require three or more on-site supervisors. (example listed below)

        (1)    3 or 4 officers working at the same time.

        (2)    5 to 10 officers = requires 1 first-line supervisor

        (3)    11 to 15 = 2 first-line supervisors

        (4)    16 or more = 3 first-line supervisors and 1 Lieutenant

    d)    Job coordinators are required to notify the Outside Employment Coordinator of extra-duty jobs requiring 5 or more officers at least seven days prior to the event or as soon as notification is made if within 7 days of the event. Site supervisors are required to make notification to the on-duty supervisors of affected precincts while marking 10-7 for the extra-duty assignment.  The Outside Employment Coordinator will notify the Precinct Commander and Special Operations Division Commander of the above listed events.

    e)    The Job Coordinator will be responsible for preparing an operational plan when appropriate. Operational plans will be required, when attendance at any event is estimated to be 1000 persons or more and/or when the event requires 10 or more police personnel. In addition, the OIC of Special Operations Division, or designee, and the Department Outside Employment Coordinator may require an operational plan for any event. When planning significant events, coordinators will discuss the event's potential impact with the Commander of the precinct, within which the event will be held.

    f)    Operational plans must include sufficient police personnel to safely police the event and manage all peripheral issues associated with the event. Peripheral issues include, but are not limited to, traffic control related to the event. Operational plans are to be submitted to the Outside Employment Coordinator within 5 business days of the event. The Outside Employment Coordinator will forward all Extra-Duty Operational Plans to the OIC of Special Operations Division at least three days prior to the event.

    g)    The OIC of Special Operations Division or designee will have authority to approve or disapprove the operational plan, to include requiring additional extra-duty personnel. Event organizers, who do not wish to hire sufficient police personnel, may have their request for extra-duty personnel, street closing permits, parade permits, or parking permits denied.

        Note:  On-duty supervisors should be aware of what extra-duty assignments are active in their areas and should make efforts to periodically conduct checks.  The Night Supervisor and Area Watch Commander should report any extra-duty site checks to the Outside Employment Coordinator.

8. Radio Procedures:

   a) All officers working <u>any</u> extra-duty job will be required to mark in-service with the Department of Emergency Communications (DEC) via radio at the beginning of each assignment. Code numbers will be used ███████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████.

   b) Officers are required to monitor the radio while working extra-duty assignments. If the nature of the assignment makes monitoring the radio impossible, the officer is required to have a pager or cell phone so DEC can make immediate contact if needed.

   c) At the end of the extra-duty assignment, officers will mark ████ and advise DEC of any actions taken.

   d) In any off-duty assignment where there are three or more officers working, the site supervisor will notify DEC by telephone and relay all appropriate information (████████████████████████████). The site supervisor will also mark the detail ████ after ensuring all officers are accounted for. Individual officers will not need to mark in and out of service, but must still monitor the radio.

   e) A dispatcher from DEC shall notify the police supervisor in DEC of those officers who have failed to clear their extra-duty assignments as scheduled. The police DEC supervisor will then contact a patrol supervisor in the precinct where the assignment is located. It will be that supervisor's responsibility to ensure the well-being of the officer who was working the extra-duty assignment. Any officer who continuously fails to mark off-duty is subject to suspension of extra-duty privileges for a period of 30 days.

   f) Officers working any patrol overtime must identify that fact to DEC when marking in-service. Court overtime is excluded.

VII. <u>FORMS</u>

   A. PD-12, Request for Extra-Duty Police Officers.

   B. PD-12A, Outside Employment Request.

   C. PD-12B, Outside Employment Request, Captains and Above.

   D. PD-57, Overtime or Off-Duty Report.

   E. PD-119-SE, Employer Agreement For Extra-Duty Police Services, for Single Event.

   F. PD-119-OE, Employer Agreement For Extra-Duty Police Services for Ongoing Events.

   G. PD-119-OE, Employer Agreement For Extra-Duty Police Services for Special Events.

   H. PD-119A, Funeral Home Employer Agreement For Extra-Duty Police Services.

   I. PD-119B, Other City Departments Employer Agreement For Extra-Duty Police Services.

   J. PD-119C, Employer Agreement For Extra-Duty Police Services.

   K. PD-167, Extra Duty Employment – Marked Vehicle Usage Log

L.   Extra-Duty Job Assignment Notification Form