IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARGARET P. BYERS, *et al.*,

      Plaintiffs,

v.                                     Civil Action No.:  3:23cv801-RCY

CITY OF RICHMOND, *et al.*,

      Defendants.

## MEMORANDUM IN SUPPORT OF CHESTERFIELD
## COUNTY'S MOTION TO DISMISS

      COMES NOW the County of Chesterfield, Virginia (the "County"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7(F), and submits this Memorandum in Support of Chesterfield County's Motion to Dismiss.

### PRELIMINARY STATEMENT

      On July 8, 2023, Chesterfield County police officers responded to reports of a man breaking and entering multiple homes. When the officers arrived at approximately 12:50 p.m. on a Saturday afternoon, they encountered Plaintiffs' son, Charles M. Byers, clutching a hatchet in the front lawn of a home in a residential neighborhood. After Mr. Byers refused to comply with repeated commands to drop the hatchet, a Chesterfield County police officer unsuccessfully tased Mr. Byers before a second officer shot and killed him.

      On November 22, 2023, Plaintiffs filed a Complaint against Chippenham & Johnston-Willis Hospitals, Inc ("CJW"); David R. Hyde, Jr.; the City of Richmond; Richmond police officer Steven M. Gibson; and unnamed security guards. On July 10, 2024, Plaintiffs filed an Amended Complaint which added the County and Chesterfield County police officer Corporal Gordon J. Painter as Defendants.

Plaintiffs allege two claims against the County in the Amended Complaint. In Count Three, Plaintiffs claim that the County is liable under 42 U.S.C. § 1983 for adopting a policy of violating the Fourth Amendment's prohibition on excessive force. As explained below, this claim fails because Plaintiffs have not alleged a widespread pattern by County police officers of excessive force of any kind—much less in circumstances similar to the incident with Mr. Byers.

In Count Five, Plaintiffs assert a state law wrongful death claim against the County based on negligence, gross negligence, and willful and wanton negligence. However, Virginia law is clear that the County is absolutely immune from tort claims, no matter the degree or kind of negligence on which they are based. The County therefore respectfully requests that the Court dismiss both claims against the County, with prejudice.

## FACTUAL ALLEGATIONS PERTINENT TO THE COUNTY

The factual allegations regarding the County are extremely limited. They begin on page 46 of the Amended Complaint and consist of only five paragraphs. (Am. Compl. ¶¶ 58-62.) In those paragraphs, Plaintiffs primarily allege that the County sought to "cover up" facts about the shooting of Mr. Byers after the incident occurred. In this regard, Plaintiffs first allege that the County misrepresented Mr. Byers' actions during the incident and refused to release video footage of the shooting from the police officers' body-worn cameras. (Am. Compl. ¶ 58.) Plaintiffs then allege that the County somehow interfered with the Chesterfield County Commonwealth's Attorney's review of the shooting by hiring a third-party company to analyze the incident. (Am. Compl. ¶ 59.) In paragraphs 60 and 62, Plaintiffs repeat the allegations that the County sought to "cover up" the shooting and that after the shooting the County intentionally withheld information about the incident. (Am. Compl. ¶¶ 60, 62.) As addressed below, none of these allegations—all of

2

which involve actions allegedly taken <u>after</u> the shooting—have any bearing on Plaintiffs' claims against the County.

Plaintiffs' remaining allegations against the County concern Corporal Painter. Plaintiffs state in conclusory terms that Corporal Painter had a propensity to use excessive force and that the County did nothing to address the alleged risk posed by him. (Am. Compl. ¶ 61.) The only facts offered in support of this assertion concern a single incident from 2019 that resulted in a lawsuit being filed against Corporal Painter. (Am. Compl. ¶¶ 61-62.) Plaintiffs have copied the allegations from that complaint into the Amended Complaint without offering any independent factual allegations. (Am. Compl. ¶ 61.) As alleged, the 2019 incident involved a traffic stop during which Corporal Painter allegedly struck the plaintiff with a closed fist, forcibly removed him from the vehicle, slammed him to the ground, and aggressively handcuffed him. (Am. Compl. ¶ 61.) Unlike the incident with Mr. Byers, the prior event did not involve the use of deadly force or the presence of a weapon by the plaintiff. The previous lawsuit was settled prior to trial. (Am. Compl. ¶ 61.)

Plaintiffs fail to note that the prior lawsuit involving Corporal Painter also involved a § 1983 claim against the County and that the Court granted the County's motion to dismiss the claim. <u>Wilson v. Painter</u>, No. 3:20-cv-645, 2020 WL 7497801, at *6 (E.D. Va. Dec. 21, 2020).[1] The Court held that Corporal Painter's use of force in that case was not indicative of an unconstitutional policy on the part of the County because, among other reasons, the plaintiff had not alleged a "pre-existing pattern of constitutional violations" by County police officers that caused the injury to the plaintiff. <u>Id.</u>

Finally, Plaintiffs state that Corporal Painter has used excessive force in other instances but

---

[1] The plaintiff sued the County's chief of police in his official capacity, which is analogous to a claim against the County. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-166 (1985).

do not provide any factual allegations in support of this conclusory statement. (Am. Compl. ¶ 62.) There are no allegations regarding the type of force used in any of the alleged incidents, the circumstances surrounding the incidents, when the incidents occurred, or anything else about them. (Am. Compl. ¶ 62.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Well-pleaded allegations are taken as true and are viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A plaintiff must allege facts sufficient to raise a right to relief above the speculative level and state a claim that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). To survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)).

## ARGUMENT

**I.   Plaintiffs Have Not Stated a Monell Claim under 42 U.S.C. § 1983 Against the County**

   a.   Legal Standard Applicable to *Monell* Claims

Local governments are considered "persons" for purposes of § 1983 and are subject to suit

in certain circumstances. <u>Hunter v. Town of Mocksville, N.C.</u>, 897 F.3d 538, 553 (4th Cir. 2018). Local governments cannot, however, be held liable under § 1983 under a theory of <u>respondeat superior</u>. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). Instead, liability may be imposed only where the "execution of a government's <u>policy or custom</u>, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." <u>Id.</u> at 694 (emphasis added). An official policy or custom is generally shown in one of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

<u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003) (quoting <u>Carter v. Morris</u>, 164 F.3d 215, 217 (4th Cir. 1999)).

A plaintiff must also demonstrate that the unconstitutional policy or custom actually caused the violation of the plaintiff's rights. <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1387 (4th Cir. 1987). "Proof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation . . . ." <u>Id.</u> at 1388. Indeed, the policy or custom must make the specific violation "almost bound to happen, sooner or later," rather than merely "likely to happen in the long run." <u>Id.</u> at 1391.

In the absence of an express unconstitutional policy, most <u>Monell</u> claims against local governments in the context of alleged civil rights violations by police fall into one of two theories: "deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers;" or a failure to "put a stop to

or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example." Id. at 1389.

b. Legal Standard Applicable to Condonation Claims

The County assumes that Plaintiffs' Monell claim is based on the theory that the County has condoned a widespread pattern of unconstitutional police misconduct.[2] Under a condonation theory of liability, a local government violates § 1983 if policymakers fail to remedy "a persistent and widespread pattern of unconstitutional conduct," the "'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens v. Baltimore City State's Atty's Office, 767 F.3d 379, 402 (4th Cir. 2014) (quoting Spell, 824 F.2d at 1386-91) (alterations omitted). Only "'widespread or flagrant'" misconduct is sufficient; allegations of "[s]poradic or isolated" incidents are not. Id. at 403 (quoting Spell, 824 F.2d at 1387). A custom that gives rise to § 1983 liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 62 (2011). "A showing of simple or even heightened negligence will not suffice." Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 407 (1997).

Additionally, a plaintiff must allege "[a] pattern of similar constitutional violations" to demonstrate deliberate indifference by the locality. Connick, 563 U.S. at 62 (emphasis added); see also Campbell v. Greiner, No. 5:23-cv-201, 2024 WL 1122044, at *5 (E.D.N.C. Mar. 14, 2024)

---

[2] The Amended Complaint does not contain any allegations regarding an express policy or the training of County police officers and therefore cannot be read as an attempt to assert either type of Monell claim.

("the other alleged misconduct must be <u>similar</u> to that which caused the plaintiff's injuries") (citing <u>Carter</u>, 164 F.3d at 218) (emphasis added); <u>Skeen v. Washington Cnty. Sheriff's Off.</u>, No. 1:20-cv-00017, 2020 WL 6688550, at *5 (W.D. Va. Nov. 12, 2020) (allegations of two allegedly unlawful prior shootings were insufficiently similar to instant shooting case to state plausible unconstitutional custom claim). This requirement is necessary to ensure that liability is imposed only when a municipal custom is the actual cause of the plaintiff's alleged injury. As the Fourth Circuit has explained, "claims that past generalized bad police behavior" lead to "future generalized bad police behavior . . . fail[] the rigorous standards of culpability and causation required for municipal liability under section 1983." <u>Carter</u>, 164 F.3d at 219 (citation and internal quotation marks omitted).

    c.  <u>Plaintiffs Have Not Adequately Alleged a Condonation Claim Against the County</u>

        Plaintiffs have not alleged sufficient facts to state a claim that County policymakers have a custom of condoning persistent and widespread constitutional violations of the kind at issue in the Amended Complaint. Nor have Plaintiffs alleged that any such custom was the moving force behind the shooting of Mr. Byers.

        To start with, only five paragraphs in the Amended Complaint can even arguably be said to address Plaintiffs' <u>Monell</u> claim against the County. (Am. Compl. ¶¶ 58-62.) A large portion of those paragraphs consist of allegations that the County sought to "cover up" its involvement in the shooting and withheld information in the aftermath of the incident. (Am. Compl. ¶¶ 58-60, 62.) In Paragraph 59, Plaintiffs make the remarkable assertion that the decision of the Commonwealth's Attorney—an independent constitutional officer who is not part of the County government—that the shooting was justified was improperly swayed by the County's hiring of a third-party consultant. Regardless of the veracity of these allegations, they do nothing to establish an

actionable custom on behalf of the County under § 1983. The County's alleged actions <u>following</u> the shooting cannot possibly have caused the incident, which Plaintiffs must allege to state a plausible <u>Monell</u> claim. <u>Spell</u> 824 F.2d at 1388, 1391. The Court should ignore the allegations regarding the alleged "cover up" because they simply have no bearing on a <u>Monell</u> claim against the County.

Plaintiffs' remaining allegations also fail to support a condonation claim against the County because they do not adequately allege a widespread pattern of similar acts of unconstitutional conduct. Plaintiffs never allege that County police officers have a history of routinely deploying excessive force. The Amended Complaint does not contain even conclusory allegations that County police officers customarily used excessive force and that County policymakers regularly turned a blind eye to such conduct. Plaintiffs simply never state that is the case. Nor do Plaintiffs ever state that the shooting of Mr. Byers is representative of any larger pattern of misconduct.

Instead, Plaintiffs allege a single incident of alleged prior misconduct by the same officer—four and a half years ago and under manifestly different circumstances—and ask the Court to infer from that incident a "widespread and persistent pattern" of similar constitutional violations. <u>Owens</u>, 767 F.3d at 402-03. However, numerous cases hold that allegations of isolated incidents of misconduct are insufficient to state a plausible condonation claim and survive a motion to dismiss. For example, in <u>November v. Chesterfield County</u>, the plaintiff alleged that the County had failed to correct police officers' alleged misuse of tasers. No. 3:17-cv-113, 2017 WL 4922017, at *4 (E.D. Va. Oct. 31, 2017). The plaintiff alleged two prior incidents of using tasers in the presence of combustible materials and "a few" examples of using tasers on suspects who were already restrained, which matched the circumstances of the plaintiff's alleged injury. <u>Id.</u> Despite the similarity between the alleged past violations and the circumstances of the plaintiff's case, the

court held that he had failed to adequately allege "widespread" misuse that could survive a motion to dismiss. Id. Similarly, in Davis v. Lilly, the court found that the plaintiff's allegations of two prior instances of violent misconduct on the part of the same defendant officer were "insufficient to support a Monell claim that the [locality] was deliberately indifferent to the actions of its officers and condoned such conduct." No. 7:23-cv-152, 2023 WL 6565288, at *6 (W.D. Va. Oct. 10, 2023). Additionally, in Nicholson v. Baltimore Police Department, the plaintiff alleged that the defendant officer had previously been sued for breaking an individual's jaw while responding to a call for service and that the case resulted in a settlement. No. 20-cv-3146, 2021 WL 1541667, at *9 (D. Md. April 20, 2021). The plaintiff argued that in settling the prior lawsuit rather than terminating the officer, the locality created a custom of condoning excessive force. Id. The court granted the locality's motion to dismiss, finding that the "isolated incident of prior misconduct alone is insufficient to meet the high bar required for stating a Monell claim based on a theory that the [Baltimore Police Department] acquiesced in a widespread pattern of constitutional violations." Id.

There is no shortage of additional cases reaching the same conclusion and granting motions to dismiss when the plaintiff has alleged only a single or a small number of prior incidents. See, e.g., Campbell, 2024 WL 1122044, at *5 (single prior incident plus "perfunctor[y] alleg[ations]" of a history of improper stop and frisk violations); Simmons v. Baltimore City Police Dept., No. 21-cv-00969, 2023 WL 8452448, at *15 (D. Md. Dec. 6, 2023) (four prior incidents of improper police pursuits resulting in settlements); Talley v. Anne Arundel Cnty., Maryland, No. 21-cv-347, 2021 WL 4244759, at *14 (D. Md. Sept. 17, 2021) (four prior incidents of misconduct); Skeen, 2020 WL 6688550, at *5 (two prior incidents of improper shootings); Peters v. City of Mount Ranier, 14-cv-00955, 2014 WL 4855032, at *6 (D. Md. Sept. 29, 2014) ( "three solitary examples"

of false arrests "insufficient, as a matter of law, to demonstrate the existence of an official municipal custom or policy"); McDonnell v. Hewitt-Angleberger, 11-cv-3284, 2012 WL 1378636, at *3 (D. Md. Apr. 9, 2012) ("[T]he existence of a total of three isolated incidents (including Plaintiff's incident) does not demonstrate sufficient duration or frequency to impute constructive knowledge of a custom of brutality to the County.").

In this case, Plaintiffs rely on a single incident of prior alleged excessive force by Corporal Painter that resulted in a settlement. As with the cited cases, Plaintiffs fail to allege the "widespread and persistent" pattern of misconduct that is required to establish a custom of condonation. A single incident from four and a half years ago among the literally hundreds of interactions that County police officers have with citizens each day does not plausibly suggest that the County was aware of persistent misconduct on the part of its police force that needed correction. Plaintiffs never state—much less allege facts to support—that there is a culture within the County's police department which permits officers to regularly use deadly force without justification knowing that leadership will look the other way. Instead, the entire claim is premised on a single incident involving a single officer in altogether different circumstances. To permit Plaintiffs' claim to go forward on the meager facts alleged here would subject every locality which has ever been the subject of even a single excessive force complaint—which is likely every locality that operates a police force—to be subject to a subsequent Monell claim based solely on that fact. Such a result would be contrary to the numerous admonitions from the Supreme Court and the Fourth Circuit to reject claims that are based only on such isolated instances of misconduct. See, e.g., Spell, 824 F.2d at 1387.

Moreover, the facts of the one alleged prior use of excessive force are materially distinct from the facts of this case. See, e.g., Connick, 563 U.S. at 62 (plaintiff must allege "[a] pattern of

10

similar constitutional violations" to demonstrate deliberate indifference by the locality) (emphasis added). This case involves the use of deadly force by an officer confronting an individual suspected of breaking into numerous homes and wielding a hatchet. It is wholly unlike the 2019 incident referred to in paragraph 61, which concerned a traffic stop and did not involve the presence of a weapon on the part of the plaintiff. The prior case also involved the use of significantly less force, even if one accepts the misrepresented facts contained in the complaint in that case and copied into the Amended Complaint here. The two incidents do not bear any relationship to one another beyond the involvement of the same officer, and thus the prior incident is not indicative of a County-wide pattern of conduct "of which the specific violation is simply an example." Spell, 824 F.2d at 1389. A plaintiff must allege sufficiently similar prior instances of misconduct such that "municipal employees could reasonably infer from [them] tacit approval of the conduct in issue." Milligan, 743 F.2d at 230. Nothing about the incident alleged in paragraph 61 would apprise County police officers about the appropriateness of using deadly force on a criminal suspect who refuses to obey repeated commands to drop a deadly weapon. The circumstances confronting the officers in this case were unique, and Plaintiffs have not alleged facts to show that it fits within a larger pattern of misconduct. At most, Plaintiffs allege "past generalized bad police behavior" that led to "future generalized bad police behavior . . . ." Carter, 164 F.3d at 219. As the Fourth Circuit has said, such allegations fail to establish that a municipal policy or custom caused the plaintiff's injury. Id.[3]

---

[3] Additionally, Plaintiffs wrongly state that Corporal Painter's use of force in the prior case was "judicially determined to be unreasonable . . . ." (Am. Compl. ¶ 62.) In fact, the court, in ruling on a motion to dismiss and construing the facts in the light most favorable to the plaintiff, merely held that the plaintiff had plausibly alleged a constitutional violation and that Corporal Painter was not entitled to qualified immunity at that stage in the proceedings. Wilson, 2020 WL 7497801, at *10-13.

Further, Plaintiffs' conclusory statement that Corporal Painter has used excessive force in "multiple instances" lacks even the barest factual support and should be ignored. (Am. Compl. ¶ 62.) Without any factual allegations regarding the alleged incidents, the statement does nothing to advance a claim that the County has a custom of regularly condoning any kind of excessive force. See Campbell, 2024 WL 1122044, at *5 ("Plaintiff also perfunctorily alleges that the city has a history of improper stop and frisks . . . [b]ut this statement contains no supporting facts, and so again fails to satisfy pleading standards.") (citing Iqbal, 556 U.S. at 678). Indeed, this Court has already found similar conclusory statements regarding Corporal Painter to be insufficient to state a plausible Monell claim. Wilson, 2020 WL 7497801, at *6. Moreover, the assertion of nondescript misconduct cannot support a claim that the County has a custom of allowing the kind of alleged excessive force at issue here, i.e., the use of deadly force on a noncompliant criminal suspect refusing to drop a deadly weapon.

Plaintiffs' allegations regarding the County are unlike those asserted against CJW in Count Two, where Plaintiffs alleged an "inordinate number" of police-patient interactions and "numerous" allegations regarding the conditions at CJW. (ECF No. 85 at 66-67.) This Court held that such allegations established a widespread pattern of misconduct at CJW that should have put the hospital on notice that a similar violation was likely to occur in the future. (Id.) The limited allegations against the County are markedly different. Plaintiffs do not allege even a single example of unlawful deadly force that should have put the County on notice that Mr. Byers was likely to be shot by a County police officer. As previously stated, the lone example of alleged excessive force articulated by Plaintiffs could not conceivably have alerted the County to the presence of widespread misconduct by County police officers that caused Mr. Byers' death.

This Court also held that Plaintiffs failed to allege the existence of a custom of excessive force or unlawful arrest on the part of CJW. (ECF No. 85 at 69-73.) Plaintiffs' allegations lacked sufficient detail to show that the previous complained-of behavior at CJW involved instances of unconstitutional conduct or that CJW failed to investigate and/or discipline those involved in the prior incidents. (ECF No. 85 at 70.) With respect to the County, apart from the single, dissimilar incident referenced in Paragraph 61, Plaintiffs also fail to allege repeated instances of excessive force, or that the County failed to properly investigate any such complaints. As such, Plaintiffs have not demonstrated the presence of a custom sufficient to state a <u>Monell</u> claim against the County.

The County recognizes that at this stage Plaintiffs need only allege sufficient facts to support a plausible claim. The Fourth Circuit's decision in <u>Owens</u> illustrates the bare minimum of facts necessary to state a condonation claim. 767 F.3d at 403. There, the plaintiff detailed a pattern of prosecutors repeatedly withholding exculpatory evidence from criminal defendants. <u>Id.</u> The plaintiffs pointed to numerous successful challenges to the practice that demonstrated the locality's awareness of a repeated and ongoing unconstitutional practice that was identical to the violation alleged by the plaintiff. <u>Id.</u> The court concluded that the plaintiff's allegations of a lengthy history of similar violations could have established a custom that led to the plaintiff's injury. <u>Id.</u>

Plaintiffs have not alleged anything like the volume of cases at issue in <u>Owens</u>. Nor have they stated in even conclusory terms that County police officers regularly engaged in similar incidents of excessive force and that the County routinely turned a blind eye to such conduct. Allowing Plaintiffs' claim to proceed would impermissibly risk imposing liability on the County merely on the basis of <u>respondeat superior</u>. Count Three should be dismissed, with prejudice.

13

## II.    Plaintiffs' Wrongful Death Claim is Barred by Sovereign Immunity

In Count Five, Plaintiffs assert a wrongful death claim against the County based on negligence, gross negligence, and willful and wanton negligence. The claim fails for the simple reason that the County is absolutely immune from the claim.

Virginia counties are entitled to absolute immunity from tort claims absent an express waiver of immunity by the General Assembly. See Seabolt v. County of Albermarle, 283 Va. 717, 719 (2012) ("[C]ounties, as political subdivisions of the Commonwealth, enjoy the same tort immunity as does the sovereign . . . consequently, 'a county cannot be sued unless and until that right and liability be conferred by law.'") (citing Mann v. County Board of Arlington County, 199 Va. 169, 174 (1957); Fry v. County of Albemarle, 86 Va. 195, 197-99 (1889)). There is no Virginia statute that waives the immunity of counties with respect to tort claims, whether based on simple, gross, or willful and wanton negligence (or, for that matter, intentional conduct). See, e.g., Chien v. Virginia, No. 1:17-CV-677, 2017 WL 3758716, at *7 (E.D. Va. Aug. 28, 2017) (dismissing gross negligence claim against the County based on sovereign immunity); Stevens v. Berry, No. 3:11-cv-190, 2011 WL 3320773, at *2 (E.D. Va. Aug. 2, 2011) (dismissing intentional tort claim against a county based on sovereign immunity). Accordingly, the County is immune from the claims in Count Five.[4]

The County notes that its immunity differs slightly from that of the City of Richmond, which is also a defendant in this case. In Virginia, cities and towns—unlike counties—are considered "municipalities" and enjoy a somewhat lesser degree of immunity in tort claims. Jean

---

[4] The Virginia Tort Claims Act, which permits certain claims based on gross negligence to proceed against the Commonwealth, expressly excludes counties from its limited abrogation of immunity. Seabolt, 283 Va. at 720 ("[N]or shall any provision of this article be applicable to any county, city or town in the Commonwealth or be so construed as to remove or in any way diminish the sovereign immunity of any county, city or town in the Commonwealth.") (citing Va. Code § 8.01-195.3).

Moreau & Assocs., Inc. v. Heath Center Commission for the Cnty. of Chesterfield, 283 Va. 128, 140 (2012) ("[C]ounties, as opposed to municipalities, are entitled to absolute immunity as local subdivisions of the State.") (emphasis added). Determining whether a city is immune generally requires a decision that the alleged wrongful act occurred in the performance of a governmental function. Niese v. City of Alexandria, 264 Va. 230, 239 (2002). However, no such determination is necessary for counties, which enjoy absolute immunity. Count Five against the County should be dismissed, with prejudice.

## CONCLUSION

For the reasons stated above, the County requests that the Court grant its Motion to Dismiss and dismiss Counts Three and Five with respect to the County, with prejudice.

<div style="margin-left:40%">

COUNTY OF CHESTERFIELD,
VIRGINIA

By:   /s/ Andrew J. Fulwider
Jeffrey L. Mincks (VSB No. 18317)
Julie A. C. Seyfarth (VSB No. 46207)
Andrew J. Fulwider (VSB No. 83905)
Chesterfield County, Virginia
P. O. Box 40
Chesterfield, VA  23832
Telephone:  (804) 748-1491
Facsimile:  (804) 706-2615
mincksj@chesterfield.gov
seyfarthj@chesterfield.gov
fulwidera@chesterfield.gov
*Counsel for County of Chesterfield, Virginia*

</div>

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of September, 2024, I electronically filed the foregoing

Memorandum in Support of Motion to Dismiss Chesterfield County with the Clerk of Court using

the CM/ECF system, which will send a notification of such filing to all counsel of record.

By: <u>/s/ Andrew J. Fulwider</u>
Jeffrey L. Mincks (VSB No. 18317)
Julie A. C. Seyfarth (VSB No. 46207)
Andrew J. Fulwider (VSB No. 83905)
Chesterfield County, Virginia
P. O. Box 40
Chesterfield, VA  23832
Telephone:  (804) 748-1491
Facsimile:  (804) 706-2615
mincksj@chesterfield.gov
seyfarthj@chesterfield.gov
fulwidera@chesterfield.gov
*Counsel for County of Chesterfield, Virginia*

16