**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| **MARGARET P. BYERS** and **MICHAEL C. BYERS**, Co-Administrators of the Estate of **CHARLES M. BYERS,** Deceased**,**<br>                                  Plaintiffs,<br><br>v.<br><br>**CITY OF RICHMOND,**<br>**CHIPPENHAM & JOHNSTON-WILLIS HOSPITALS, INC.,**<br>**STEVEN M. GIBSON,**<br>**DAVID R. HYDE, JR.,**<br>**JOHN / JANE DOE SECURITY GUARDS (1-5),**<br>**CHESTERFIELD COUNTY,**<br>**GORDON J. PAINTER,**<br><br>                                  Defendants. | Civil Action No.: 3:23-cv-00801-RCY |

**MEMORANDUM IN RESPONSE TO MOTION TO DISMISS –
GORDON J. PAINTER**

COME NOW the plaintiffs, Margaret P. Byers and Michael C. Byers, Co-Administrators of the Estate of Charles M. Byers, Deceased, by counsel, and hereby respond to the Motion to Dismiss filed herein by the defendant, Gordon J. Painter ("Officer Painter"), as follows:

**SUMMARY OF RESPONSE**

On July 8, 2023 it was clearly established that:

> [T]he failure to obey commands by a person in possession of, or suspected to be in possession of, a weapon only justifies the use of deadly force if that person make some sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person

Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023)(holding that the aforesaid rule of law was clearly established in 2017 and possibly as early as 1991).

The main and most relevant argument made by Chesterfield County and Officer Painter in his memorandum is that "an objectively reasonable officer would believe the criminal suspect, armed with a hatchet, posed an immediate threat of serious bodily injury or death to Corporal Painter and the Female Officer", apparently justifying in the minds of Chesterfield County and Officer Painter only the killing of Charles Byers. The glaring problem with this argument is that there is no contention that Charles Byers made "some sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person." Id. Even if Chesterfield County and Officer Painter attempted to make such an argument, the body cam video would clearly contradict them. Based on the arguments made by Chesterfield County and Officer Painter, it is painfully clear that on July 8, 2023 Chesterfield County was seemingly unaware of the Constitutional limitations on its officers' use of deadly force and, thus, its officers truly believed that if a suspect holding a hatchet failed to comply with commands, the use of deadly force was justified. This may well be another reason for Charles Byers' death, as Chesterfield County obviously is not training its officers that deadly force is **not** justified when a citizen is holding a weapon and not complying with their officers' commands. Additionally, not a single case cited by Chesterfield County and Officer Painter in his memorandum supports their arguments and are otherwise easily distinguishable on the facts.

      In an attempt to make up for the clear deficiencies in their legal arguments, Chesterfield County continues to attempt to cover up the excessive and deadly force used by Officer Painter on July 8, 2023 by dishonestly claiming in Officer Painter's memorandum that Charles Byers had committed multiple crimes that were "potential" felonies on July 8, 2023 and that he was a

2

dangerous criminal who needed to be gunned down in the street by Officer Painter, a police officer known by Chesterfield County of having a history of using excessive force against citizens with no consequences.  While the plaintiffs were prepared to respond to honest and good faith legal arguments regarding the liability of the defendants for the death of their son, including the liability of Officer Painter, the plaintiffs were not prepared for the dishonest tactics of Chesterfield County and Officer Painter in manufacturing facts about the events of July 8, 2023 in Officer Painter's memorandum.  Rather, the plaintiffs expected that Chesterfield County had learned its lesson after its claims to the media immediately following the events of July 8, 2023 were publicly disproven after the body cam video of the events was released almost a year after the events of July 8, 2023, despite Chesterfield County's best efforts to keep the video hidden.  In its statements to the media on or about July 8, 2023, Chesterfield County claimed that "Byers kept advancing on Officers with a weapon in his hand" and that "Officer Painter fired an unknown number of rounds" "to <u>stop the subject's advance</u>".  Had these facts been true, the shooting of Charles Byers may have been justified under legal precedent and Officer Painter may have been entitled to qualified immunity.  However, these statements were known by Chesterfield County and Officer Painter to be untrue on July 8, 2023 and these statements continue to be untrue.   Now, instead of addressing the facts alleged in the plaintiffs' Amended Complaint, as is required for a motion to dismiss, Chesterfield County and Officer Painter dishonestly claim in Officer Painter's memorandum that Charles Byers committed multiple crimes that are "potential" felonies ranging from Class 2 to Class 6 on July 8, 2023, which both Officer Painter and Chesterfield County know to be untrue.  Making matters worse, Chesterfield County and Officer Painter attach a copy of the 911 dispatch audio to Officer Painter's memorandum that, if unaltered, clearly disproves these dishonest claims.  At approximately

two minutes and fifty-three seconds (0:02:53) of the 911 dispatch audio there is the following exchange between Officer Painter and the dispatch operator:

> (0:02:53) Officer Painter: "Any crime committed so far, made entry into anything?"
>
> (0:02:59) Dispatch Operator: "K4, looks like he vandalized one residence, **other than that I'm not seeing anything**".

Less than two minutes after this conversation, Officer Painter shot and killed Charles Byers who was backing away from Officer Painter while holding a small hatchet, which is not illegal. So, at most, Officer Painter was aware that Charles Byers may have committed vandalism by removing a screen, which is a misdemeanor and, thus, Officer Painter had no authority to arrest Charles Byers without a warrant. Had Chesterfield County and Officer Painter also attached the single 911 call (Chesterfield County claims there were multiple 911 calls made by multiple residents) that led to the interaction with police, the Court would have also heard that Charles Byers apologized to the 911 caller, who described Charles Byers as confused, and said "I'm so sorry, I thought this was my parents' home", that he asked for a glass of water and then knocked on the neighbor's door and walked away when there was no response. Fortunately, these facts were pled in the plaintiffs' Amended Complaint. Unfortunately, but not unsurprisingly, these facts were ignored by Chesterfield County and Officer Painter, as well as many other facts.

At the motion to dismiss stage, "the Court must read the complaint as a whole, construe the complaint in the light most favorable to the plaintiff, and accept the facts alleged in the complaint as true." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Chesterfield County and Officer Painter have manufactured facts regarding the events of July 8, 2023, they have made it virtually impossible to properly respond to Officer Painter's motion to dismiss, as Officer Painter, instead of

4

accepting the many facts pled by the plaintiffs as true, has chosen to ignore the facts alleged by the plaintiffs and the legal theories suggested by those facts. By so doing, Officer Painter has not only made it impossible to properly respond to his motion to dismiss but has also made it impossible for this Court to properly review his motion to dismiss. As such, this Court must deny Officer Painter's motion to dismiss. He is clearly not entitled to qualified immunity or the dismissal of any claims against him.

## MEMORANDUM OF LAW IN SUPPORT OF RESPONSE

### I. Standard of Review

The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint." Randall v. United States, 30 F.3d 518, 523 (4th Cir. 1994). To survive a Rule 12(b)(6) motion, a complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007). The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555, 570 (2007). This plausibility standard does not equate to a probability requirement, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Where, as here, the motion to dismiss involves "a civil rights complaint, [the Court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Edwards, 178 F.3d at 244 (internal quotation marks and citation omitted).

### II. Officer Painter is NOT Entitled to Qualified Immunity Because His Use of Deadly Force was Objectively Unreasonable and Violated Clearly Established Law

5

The qualified immunity analysis consists of two prongs: (1) whether a statutory or constitutional violation occurred, and (2) whether the right was clearly established at the time of the violation. Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023), Mays v. Sprinkle, 992 F.3d 295, 301 (4th Cir. 2021)(citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). "If the answer to either question is 'no', the officer being sued is entitled to qualified immunity." Id. When addressing an excessive force claim brought under § 1983, courts must first identify "the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). Relevant here, all claims that an individual used excessive force in the course of an arrest "or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard'". Graham, 490 U.S. at 395; see Tennessee v. Garner, 471 U.S. 1, 7-22 (1985). The next step of the excessive force inquiry concerns whether the force used to affect the particular seizure is in fact "reasonable" under the Fourth Amendment. In making this determination, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. Garner, 471 U.S. at 8 (quoting United States v. Place, 462 U.S. 696, 703 (1983)); see Graham, 490 U.S. at 396. The Fourth Circuit has held that four factors are "central to th[is] inquiry": (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight; and (4) the extent of the plaintiff's injuries. Hupp v. Cook, 931 F.3d 307, 322 (4th Cir. 2019) (citing Graham, 490 U.S. at 396; Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003)). This inquiry requires that courts pay "careful attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396; see Hupp, 931 F.3d at 322 ("Ultimately, we must decide 'whether

the totality of the circumstances justifie[d] a particular sort of . . . seizure.'" (quoting Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2018) (omission in original)); Wiggins v. Quesenberry, 222 F. Supp. 3d 490, 500 (E.D. Va. 2016). In this case, Officer Painter's use of deadly force was objectively unreasonable under the totality of the circumstances and under clearly established law.

To defeat a claim of qualified immunity, the plaintiffs must "plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct". Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023). At the 12(b)(6) stage, a plaintiff must simply allege "enough facts relevant to the reasonableness of the officers' actions to 'raise a right to relief above the speculative level.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

    A.    <u>Officer Painter is NOT Entitled to Qualified Immunity under the Totality of the Circumstances</u>

    1.    <u>The Severity of the Crimes was NOT High</u>

As stated *supra,* instead of addressing the facts as alleged in the Amended Complaint, Chesterfield County and Officer Painter attempt to manufacture facts that fit their false narrative that Officer Painter's killing of Charles Byers was justified. In this vein, Chesterfield County and Officer Painter dishonestly claim in Officer Painter's memorandum that Charles Byers committed multiple crimes that are "potential" felonies ranging from Class 2 to Class 6 on July 8, 2023, which both Officer Painter and Chesterfield County know to be untrue. At approximately two minutes and fifty-three seconds (0:02:53) of the 911 dispatch audio that is attached to Officer Painter's memorandum there is the following exchange between Officer Painter and the dispatch operator:

    (0:02:53) Officer Painter: "Any crime committed so far, made entry into anything?"

    (0:02:59) Dispatch Operator: "K4, looks like he vandalized one residence, **other**

7

**than that I'm not seeing anything**".

Less than two minutes after this conversation with the 911 dispatcher, Officer Painter shot and killed Charles Byers who was backing away from Officer Painter while holding a small hatchet, which is not illegal.  So, at most, Officer Painter was aware that Charles Byers may have committed vandalism by removing a screen, which is a misdemeanor.  See Va. Code Ann. § 18.2-137.  Because Charles Byers had only committed a misdemeanor, at most, Office Painter did not even have the authority to arrest Charles Byers much less to kill him.  Pursuant to Va. Code Ann. § 19.2-81(B), Officer Painter only had the authority to arrest without a warrant "any person who commits any crime in the presence of the officer and any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence".  While it is unclear from the body cam video whether Officer Painter was attempting to arrest Charles Byers when he shot and killed him, what is clear is that Officer Painter did not have the authority to arrest Charles Byers – making the false claims of Chesterfield County and Officer Painter that Charles Byers had committed multiple "potential" felonies seem quite calculated for this inquiry.  The facts are – Charles Byers had only committed a misdemeanor against property, at most, and was standing in a driveway holding a small hatchet by his side; an act that is legal in Virginia and likely every other state in the country, and Officer Painter overreacted, as he was known by Chesterfield County to do, leading to and resulting in Charles Byers' death by seven bullets from Officer Painter's gun.  In any case, because the suspected crime at issue was a minor one against property, this first "Graham factor" (and the others) weighs in plaintiffs' favor.  See Knibbs v. Momphard, 30 F.4th 200 (4th Cir. 2022).

    2.    <u>Charles Byers DID NOT Pose an Immediate Threat to Anyone</u>

Where deadly force has been used, the Graham factor of whether the suspect posed an immediate threat is "particularly important". See Franklin v. City of Charlotte, 64 F.4th 519, 531 (4th Cir. 2023). In such cases, the Court must consider whether a reasonable officer on the scene would have had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005)(quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985). This Court must assess the objective reasonableness of an officer's use of deadly force "based on the totality of the circumstances". Hensley ex rel. North Carolina v. Price, 876 F.3d 573, 582 (4th Cir. 2017)(citing Yates v. Terry, 817 F.3d 877, 883 (4th Cir. 2016), "and based on the information available to the [officer] 'immediately prior to and at the very moment [he] fired the fatal shots,'" Id. (quoting Greenidge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991). "It has long been 'established in this circuit that the reasonableness of an officer's actions is determined based on the information possessed by the officer at the moment that force is employed'". Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023), See also Waterman, 393 F.3d at 481 (citing Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996); See also Betton v. Belue, 942 F.3d 184, 191 (4th Cir. 2019)("We assess the reasonableness of the officer's conduct based on the circumstances confronting the officer immediately prior to and at the very moment he fired his weapon"). As such, the Fourth Circuit Court of Appeals has recognized that the "reasonableness determination must focus on the moment that deadly force was used, not the whole episode". Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023). In this case, Officer Painter was told by the 911 dispatch operator that Charles Byers may have committed a misdemeanor against property. Just seconds later Officer Painter arrived at the scene and saw Charles Byers holding a small hatchet, which is entirely legal. Immediately upon arriving at the scene, Officer Painter pulled his car

9

directly in front of Charles Byers, seemingly startling him, drew his weapon and pointed it at Charles Byers, and commanded that he drop the hatchet. From that point until Officer Painter shot and killed Charles Byers, Charles Byers backed away from Officer Painter. During the entire incident, which only lasted approximately forty-five seconds, Charles Byers never threatened anyone with the hatchet, made no general threats to anyone and most importantly never made any "sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person." Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023). Therefore, as a matter of clearly established law, Officer Painter's use of deadly force was unreasonable, and Officer Painter is not entitled to qualified immunity. Not a single case cited by Chesterfield County and Officer Painter supports their arguments. In Sigman v. Town of Chapel Hill, 161 F.3d 782, 786 (4th Cir. 1998), the suspect slashed at officers with a knife, issued threats to the officers and walked toward the officers after being commanded to stop. In Shaw v. City of Selma, 884 F.3d 1083 (11th Cir. 2018), the suspect, Shaw, turned around and came towards the officer who shot him shouting "shoot it, shoot it." In Blanford v. Sacramento County, 406 F.3d 1110 (9th Cir. 2005), the suspect was wearing a ski mask and carrying a 2 ½ foot cavalry sword, which was a crime, raised the sword in the air and growled at the officers, and was in the process of gaining entry to a residence when the officers opened fire. In Rambert v. City of Greenville, 107 F.4th 388 (4th Cir. 2024), the suspect charged at the officer yelling indecipherably. In Kisela v. Hughes, 138 S.Ct. 1148 (2018), the suspect while holding a large kitchen knife moved towards a nearby woman after not obeying commands by officers to drop the knife. In each of these cases on which the County of Chesterfield and Officer Painter attempt to rely the element missing in this case is present, *i.e.* the suspect made "a furtive or other threatening

10

movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person." While Chesterfield County and Officer Painter may use scary words like "wield" and "armed" and "clenched" to describe Charles Byers' lawful holding of a hatchet, the fact of the matter is that Charles Byers was holding a hatchet by his side and backing away from Officer Painter when he was shot and killed unjustifiably in violation of Charles Byers' constitutional right to be free from the ultimate Fourth Amendment seizure by death. There is little question that this Graham factor, which is the most important factor, weighs heavily in plaintiffs' favor.

> 3. <u>Charles Byers WAS NOT attempting to Resist or Evade Arrest and WAS NOT even Subject to Arrest</u>

Charles Byers was not attempting to resist or evade arrest. While it is unclear whether Officer Painter was attempting to arrest Charles Byers, Officer Painter did not have the authority to arrest him. While Chesterfield County and Officer Painter may claim that Charles Byers committed multiple "potential" felonies, it is simply not true and both Chesterfield County and Officer Painter know it is untrue. Once again, at approximately two minutes and fifty-three seconds (0:02:53) of the 911 dispatch audio that is attached to Officer Painter's memorandum there is the following exchange between Officer Painter and the dispatch operator:

> (0:02:53) Officer Painter: "Any crime committed so far, made entry into anything?"
>
> (0:02:59) Dispatch Operator: "K4, looks like he vandalized one residence, **other than that I'm not seeing anything**".

Less than two minutes after this conversation with the 911 dispatcher, Officer Painter shot and killed Charles Byers who was backing away from Officer Painter while holding a small hatchet, which is

11

not illegal. So, at most, Officer Painter was aware that Charles Byers may have committed vandalism by removing a screen, which is a misdemeanor. See Va. Code Ann. § 18.2-137. Because Charles Byers had only committed a misdemeanor, at most, Office Painter did not even have the authority to arrest Charles Byers much less to kill him. Pursuant to Va. Code Ann. § 19.2-81(B), Officer Painter only had the authority to arrest without a warrant "any person who commits any crime in the presence of the officer and any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence". In any case, other than "drop the hatchet", neither Officer Painter nor the Female Officer ever said a word to Charles Byers. They never asked him any questions. They never warned that he would be shot. They never told him that he was under arrest. They just arrived at the scene, pulled their guns, and shouted at Charles Byers to drop the hatchet, which was lawful for him to hold. Within forty-seconds Charles Byers was dying in the street after being shot multiple times, including in his back, which shots proved to be fatal.

   4. <u>The Extent of Plaintiff's Injuries</u>

While Officer Painter did not address this <u>Graham</u> factor, it cannot be questioned that this <u>Graham</u> factor weighs heavily in favor of the plaintiffs, as Charles Byers lost his life as a direct and proximate result of Officer Painter's violation of Charles Byers' right to be free from the ultimate Fourth Amendment "seizure" – death.

   B. <u>Binding Precedent HAS Held that the Use of Deadly Force in Sufficiently Similar Circumstances Constituted an Unreasonable Use of Force</u>

The second prong of the qualified immunity analysis in this case is whether the constitutional right allegedly violated was clearly established in July 2023 when Officer Painter shot and killed

Charles Byers. "A right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established'". Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023)(citing Wilson v. Prince George's Cnty, 893 F.3d 213, 221 (4th Cir. 2018). And, Officer Painter "bears the burden of proof under the second prong of the qualified immunity analysis". Stanton, 25 F.4th at 233. The constitutional right that was violated in this case is the Fourth Amendment right to be free from excessive force and the ultimate "seizure" of death under the circumstances of this case, which are: while holding a hatchet, backing away from officers, and not obeying commands by the officers to drop the hatchet. On July 8, 2023 it was clearly established in the Fourth Circuit that:

> [T]he failure to obey commands by a person in possession of, or suspected to be in possession of, a weapon only justifies the use of deadly force if that person make some sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person

Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir. 2023)(holding that the aforesaid rule of law was clearly established in 2017 and possibly as early as 1991).

In Aleman, a case involving the fatal shooting of Ruben Galindo Chavez ("Galindo") by an officer of the Charlotte-Mecklenburg Police Department, the defendant police officer made the same argument as Officer Painter makes in this case that "no binding precedent has held that the use of deadly force in sufficiently similar circumstances constituted an unreasonable use of force", relying on the same cases on which Officer Painter relies in this case. In Aleman, Galindo was shot while holding a gun and not obeying the commands of the officers. The officer in Aleman maintained that his actions were objectively reasonable and that, even if his actions were not objectively reasonable, that the constitutional right allegedly violated was not clearly established in September 2017 when

13

the officer shot Galindo.  In answering this question in the affirmative, the Fourth Circuit Court of Appeals held that in September 2017, based on its decisions in Cooper v. Sheehan, 735 F.3d 153 (4th Cir. 2013), Anderson v. Russell, 247 F.3d 125 (4th Cir. 2001), Sigman v. Town of Chapel Hill, 161 F.3d 782 (4th Cir. 1998), Elliott v. Leavitt, 99 F.3d 640 (4th Cir. 1996), McLenagan v. Karnes, 27 F.3d 1002 (4th Cir. 1994), and Slattery v. Rizzo, 939 F.2d 213 (4th Cir. 1991), along with its November 2017 decision in Hensley ex rel. North Carolina v. Price, 876 F.3d 573 (4th Cir. 2017) clearly establish the following:

> [T]he failure to obey commands by a person in possession of, or suspected to be in possession of, a weapon only justifies the use of deadly force if that person make some sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person

The right that the plaintiffs claim was violated is the right of Charles Byers to be free from the excessive use of deadly force while holding a hatchet, backing away from police officers and not obeying commands to drop the hatchet.  Since this right was clearly established on July 8, 2023, Officer Painter's motion fails.

### III. Plaintiffs' Wrongful Death Claims DO NOT Fail as a Matter of Law

Officer Painter's arguments regarding plaintiffs' state law wrongful death claims are directly tied to a favorable ruling on the plaintiffs' civil rights claims against him.  Since Officer Painter violated Charles Byers' constitutional right to be free from excessive force and Officer Painter is not entitled to qualified immunity, Officer Painter's motion regarding plaintiffs' state law claims fails as a matter of law.

## **CONCLUSION**

For the reasons set forth herein, the plaintiffs respectfully request that Officer Painter's motion to dismiss be denied.

        **MARGARET P. BYERS** and **MICHAEL C. BYERS**, Co-Administrators of the Estate of **CHARLES M. BYERS,** Deceased**,**

        BY:   /s/ Paul McCourt Curley
                      Counsel

Paul McCourt Curley, Esq. VSB No. 43794
SIX EAST LAW GROUP –
CURLEY LAW FIRM, PLLC
6 East Broad Street
Richmond, Virginia 23219
Telephone: (804) 355-8273
E-Mail: paul.curley@sixeastlaw.com
www.sixeastlaw.com
  *Counsel for Plaintiffs*

## **CERTIFICATE**

I hereby certify that on the 23rd day of September 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              /s/ Paul McCourt Curley