IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARGARET P. BYERS, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:23CV801 (RCY) |
| ) | |
| CITY OF RICHMOND, *et al.*, ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Gordon J. Painter's Motion to Dismiss, ECF No. 90. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant in part and deny in part the Motion to Dismiss.

**I. BACKGROUND[1]**

This action is brought by Plaintiffs Margaret P. Byers and Michael C. Byers as co-administrators of their son Charles M. Byers's ("Mr. Byers") estate. Am Compl. ¶ 10, ECF No. 81. Plaintiffs advance two counts against Defendant Gordon J. Painter ("Officer Painter" or "Defendant Painter") in connection with their son's death: Excessive Force and Deprivation of Civil Rights pursuant to 42 U.S.C. § 1984 (Count III); and Wrongful Death, Negligence, Gross

---

[1] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or the plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Amended Complaint, including any attached documents, as follows.

Negligence, and/or Willful and Wanton Negligence pursuant to Virginia law (Count V). *Id.* ¶¶ 97–114. The facts relevant to these claims are as follows:

### A. The Lead-Up to Mr. Byers's Encounter with Chesterfield County Police[2]

Mr. Byers's struggle with various mental health issues started in 1999. Am. Compl. ¶ 31. In or about 2008, he was diagnosed with schizoaffective disorder. *Id.* ¶ 32. His condition was managed for several years with a combination of medications, therapy, and voluntary hospitalizations. *Id.* ¶ 33–34. However, in or about 2023, Mr. Byers's condition began to worsen, and he told his parents that he needed help. *Id.* ¶ 35. Plaintiffs observed that Mr. Byers was particularly "anxious, confused, and delusional—often having conversations with someone who was not there, sometimes mumbling and laughing to himself;" he was clearly "struggling with reality" and "desperately needed help" with his mental illness. *Id.*

On July 5, 2023, Mr. Byers's mother drove him to Chippenham Hospital, where he was accepted into intake for admittance to the mental health unit at Tucker Pavilion. *Id.* ¶ 36. After receiving assurances that Mr. Byers would be assigned a "sitter" to prevent him from wandering within and/or out of the hospital pending admittance, as he had done in the past, and that she would be contacted if there were any issues, Mr. Byers's mother departed. *Id.* Unfortunately, Mr. Byers was not supervised in the promised manner, which led to him wandering the halls of the hospital and eventually being forcibly arrested and removed from Tucker Pavilion by Richmond Police Department ("RPD") officers present at Tucker Pavilion as "extra duty" security. *Id.* ¶¶ 37–49.

---

[2] The Court has previously set out a more detailed recitation of the facts concerning Mr. Byers's medical history, his time at Tucker Pavilion, and his arrest and release by Richmond City Police. *See* Mem. Op., *Byers v. City of Richmond*, 2024 WL 3938830 (E.D. Va. Aug 26, 2024), ECF No. 85 (CJW Motion to Dismiss); Mem. Op., *Byers v. City of Richmond*, 2024 WL 4267186 (Sept. 23, 2024), ECF No. 93 (City of Richmond Motion to Dismiss); Mem. Op., *Byers v. City of Richmond*, 2024 WL 4295232 (Sept. 25, 2024), ECF No. 99 (Gibson Motion to Dismiss). Those facts, while helpful in understanding the full chain of events involved in this suit, are not essential to resolving the present motion, and so the Court dispenses with reciting them in full yet again here.

Upon being taken to Richmond City Jail, Mr. Byers appeared before a magistrate, who directed that Mr. Byers be released on his own recognizance. *Id.* ¶ 50.

**B. Mr. Byers's Release and Fatal Encounter with Officer Painter**

Mr. Byers was released from the City of Richmond jail during the evening hours of July 6, 2024. *Id.* ¶ 51. While still experiencing paranoia and delusions, Mr. Byers proceeded to walk the fourteen-mile distance from the jail to his neighborhood in Chesterfield. *Id.* Still limited by his mental state, Mr. Byers was unable to precisely locate his home and instead "wandered around his neighborhood and adjoining neighborhoods searching for his home" for several hours. *Id.*

At 12:49 p.m., on July 8, 2023—nearly two days after Mr. Byers began to walk home— the Chesterfield County Police Department ("CCPD") received a 911 call reporting that Mr. Byers had attempted to enter the caller's house. *Id.* ¶ 52. The caller further reported that she had asked Mr. Byers what he was doing, to which Mr. Byers responded: "I'm sorry, I thought this was my parents' house." *Id.* Then, the caller observed Mr. Byers attempt to open a neighbor's door and enter another's garage. *Id.* While in the garage, Mr. Byers picked up a small hatchet, which he was holding when CCPD officers arrived at the scene. *Id.* The 911 caller reported that Mr. Byers seemed confused and unsteady. *Id.* ¶ 54.

Officer Painter and another unnamed CCPD officer responded to the 911 call. *Id.* ¶ 53. The unnamed officer arrived first, "pulled up and immediately drew her gun and pointed it at [Mr. Byers]." *Id.* Officer Painter did the same when he arrived, "startl[ing] Mr. Byers." *Id.* Mr. Byers immediately began backing away from the two officers, "who had their guns drawn on him and were yelling at him to put down the hatchet." *Id.* At Officer Painter's direction, the first officer fired her taser at Mr. Byers, "but apparently missed." *Id.* As emphasized by Plaintiffs, Officer Painter never attempted to "speak to [Mr. Byers] in a . . . nonthreatening way or assess his medical condition or mental or psychological state," *id.* ¶ 54, use any "less-lethal force to gain control of

3

the situation," *id.* ¶ 55, or use any "de-escalation techniques [or] warn [Mr. Byers] that he would be shot," *id*. ¶ 56.

While the first officer struggled to discharge a second taser cartridge, Officer Painter began to shoot at Mr. Byers. *Id*. Notably, when Officer Painter fired his first shot, Mr. Byers was "at least 25 feet away from Officer Painter . . . [with his] head . . . turned away." *Id*. From the allegations in the Amended Complaint and the body-worn camera footage attached as Exhibit H, it is unclear what, if anything, caused Officer Painter to shoot at that moment: at the time, Mr. Byers was continuing to back away and had not made any threatening motions. *See generally id.* ¶¶ 52–57; Am. Compl. Ex. H. After Officer Painter fired three shots, Mr. Byers turned and ran away from Officer Painter. Am. Compl. ¶ 53. Yet, Officer Painter continued to shoot, hitting Mr. Byers in the back three or four times. *Id*. Mr. Byers fell to the ground, "dying and gasping for his last breaths." *Id*. Despite Mr. Byers being entirely incapacitated, Officer Painter and the accompanying officer proceeded to "aggressively handcuff Mr. Byers." *Id*.

**C. Chesterfield County's Conduct Following Mr. Byers's Death**

Soon after Mr. Byers's death, Chesterfield County conducted an investigation into the incident. *See id.* ¶ 58. In its released investigative report and subsequent responses to media requests, the County claimed that "Byers kept advancing on [o]fficers, with a weapon in his hand," and that "Officer Painter [shot Mr. Byers] *to stop the subject's advance*." *Id.* (emphasis in original). Plaintiffs allege that these demonstrably false statements "were known to be untrue by [the County] when the statements were made, as the entire incident was recorded on the officers' [body-worn cameras]." *Id*. The County refused to release the video of the shooting to the public. *Id*.[3]

---

[3] It was only after this litigation commenced that Plaintiffs were able to obtain the relevant body worn camera footage, which has now been incorporated into the Amended Complaint by way of Exhibit H. *See, e.g.*, Mot. Quash/Mot. Prot. Order, ECF No. 48 (filed by CCPD upon its receipt of a third-party subpoena; Chesterfield County

## II. PROCEDURAL HISTORY

Plaintiffs first brought this action on November 22, 2023.  Compl., ECF No. 1.  On July 10, 2024, Plaintiffs filed an Amended Complaint, which added Officer Painter as a defendant.  Am. Compl. ¶ 17.  On September 9, 2024, Officer Painter moved to dismiss the claims against him.  Mot. Dismiss, ECF No. 90; Mem. Supp. Mot. Dismiss, ECF No. 91.  On September 23, 2024, Plaintiffs filed their Memorandum in Response to Motion to Dismiss – Gordon J. Painter ("Opposition to Motion to Dismiss").  Opp'n Mot. Dismiss, ECF No. 95.  On September 30, Officer Painter filed his Reply Memorandum in Support of Corporal Gordon Painter's Motion to Dismiss ("Reply").  Reply, ECF No. 105.

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect.  *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of

---

was not yet a defendant in this action); Pl.'s Mem. Regarding Mot. Quash/Mot. Prot. Order, ECF No. 64 (describing Plaintiffs' efforts to obtain the footage); Joint Mot. Leave to File Redacted Body Worn Camera Footage, ECF No. 68 (indicating that the parties had obtained the footage).

Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient to state a claim. *Id.*

## IV. DISCUSSION

Officer Painter is named in Counts III and V of the Amended Complaint. Am. Compl. ¶¶ 84–96, 107–114. Officer Painter contends that, due to qualified immunity, Virginia sovereign immunity, and the demands of adequate pleading, both counts fail against him. *See generally* Mem. Supp. Mot. Dismiss, ECF No. 91. For the reasons set forth below, the Motion to Dismiss will be denied in part and granted in part.

### A. Count III

Proceeding under 42 U.S.C. § 1983, Count III alleges that Officer Painter deprived Mr. Byers of his Fourth Amendment right to be free from excessive force. Am. Compl. ¶¶ 84–96, 107–114. Officer Painter first contends that qualified immunity shields him from Count III. Mem. Supp. Mot. Dismiss 12, 22–26. However, the Court finds that the Amended Complaint adequately

alleges that Officer Painter violated a clearly established right. Accordingly, qualified immunity does not shield Officer Painter from Count III, and the Court will not dismiss that claim against him.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Wingate v. Fulford*, 987 F.3d 299, 310–11 (4th Cir. 2021). The burden of establishing a qualified immunity defense is on the official asserting qualified immunity. *Wingate*, 987 F.3d at 311; *Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013).

The Supreme Court, in *Saucier v. Katz*, created a two-step procedure for resolving qualified immunity claims. 533 U.S. 194, 201 (2001). First, a court must decide if the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. *Id.* Second, a court then decides if the right was "clearly established." *Id.* In *Pearson v. Callahan*, the Supreme Court held that this two-step procedure is no longer mandatory but is "often appropriate." 555 U.S. at 236. Post-*Pearson*, it is now left to the sound discretion of the court to decide which of the two steps should be addressed first. *Id.* However, it is beneficial to address the constitutional violation prong first, as it "promotes the development of constitutional precedent." *Id.*

A constitutional right is clearly established "not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." *Sims v. Labowitz*, 885 F.3d 254, 263 (4th Cir. 2018) (citing *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002)). The central question is, "would it be clear to a reasonable officer that his or her conduct was unlawful in the particular situation that he or she confronted." *Livingston v. Kehagias*, 803 Fed. App'x 673, 678 (4th Cir. 2020).

<u>1. Constitutional Violation</u>

Plaintiffs contend that Officer Painter's shooting of Mr. Byers amounts to excessive force and therefore unreasonable seizure, violating Mr. Byers's Fourth Amendment rights.[4] Am. Compl. ¶¶ 91–96. To comply with the constraints of the Fourth Amendment, police officers may use only "reasonable" force. *Graham v. Connor*, 490 US 386, 396 (1989). Reasonableness is an objective test, based on the perspective and knowledge of the defendant officer. *Id.*; *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015). In assessing whether the type and degree of force used in a particular case was reasonable, courts generally look to the three *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

However, "[w]hen *deadly* force is used, [the Fourth Circuit employs] a more specific test for objective reasonableness." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). Instead of the *Graham* factors, a reviewing court considers "whether the hypothetical reasonable officer in that situation would have had 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others.'" *Id.* (quoting *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005)). The inquiry focuses solely "on the moment the deadly force was used, not the whole episode." *Id.* (citing *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)). As always, the Court must resist hindsight bias. *Leavitt*, 99 F. 3d at 642.

The Court considers the facts presented to Officer Painter, as described in the Amended Complaint, from the point of view of a reasonable officer. *Graham*, 490 U.S. at 39. However, at

---

[4] Plaintiffs additionally cite to the Fourteenth Amendment. Am. Compl. ¶ 93. However, excessive force and unlawful arrest are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Accordingly, the Court reads these counts as solely arising under the Fourth PageAment and performs its analysis accordingly.

the Motion to Dismiss stage, it does so while also construing the Amended Complaint in favor of Plaintiffs. *Martin*, 980 F.2d at 952; *Republican Party of N.C.*, 980 F.2d at 952.

When Officer Painter fired his first shot, Mr. Byers was "at least 25 feet away from Officer Painter . . . [with his] head . . . turned away." Am. Compl. ¶ 53. Mr. Byers held a small hatchet but was otherwise unarmed and had not made any furtive or otherwise threatening gestures.[5] *See id.* After three shots, Mr. Byers turned and ran, and Officer Painter continued to shoot. *Id.* After sustaining three or four shots in the back, Mr. Byers collapsed, visibly dying. *Id.*

At the "moment deadly forced was used," *Stanton*, 25 F.4th at 233, the only fact that could have led a reasonable officer to believe that Mr. Byers posed a threat to the officers or others was Mr. Byers's possession of a hatchet. The totality of the allegations in the Amended Complaint, however, demonstrate that, despite this possession, a reasonable officer would not have perceived Mr. Byers to present a risk of imminent harm. *Waterman*, 393 F.3d at 477.

First, the Court notes that, unlike firearms, hatchets can only injure those within reach or within throwing distance. At the time Officer Painter fired, Mr. Byers was twenty-five feet away from the officers and looking away. Am. Compl. ¶ 53. Given the distance between Mr. Byers and the officers, Mr. Byers's "confused and unsteady" state, *id.* ¶ 54, and the allegation that Mr. Byers was looking away, the Amended Complaint supports a plausible inference that the officers could not have reasonably believed that Mr. Byers was preparing to throw the hatchet. As such, taking

---

[5] The allegations of the Amended Complaint, viewed in the light most favorable to Plaintiffs, *Mylan Labs, Inc.*, 7 F.3d at 1134, alone demonstrate that Officer Painter began to shoot at Mr. Byers despite a lack of provocation. Am. Compl. ¶ 53 ("[Mr. Byers] was not a threat to Officer Painter or anyone else, immediate or otherwise, when Officer Painter began shooting at [Mr. Byers]."). Exhibit H, however, helpfully illustrates this critical moment: at the time Officer Painter begins to shoot, Mr. Byers is backing away, with both arms relaxed at his sides, holding the hatchet in one hand. Am. Compl. Ex. H, ECF No. 81-8, 00:51–00:56. Mr. Byers makes no movement toward the officers, and the hand holding the hatchet does not so much as flinch. *Id.* Notably, Mr. Byers continued to act unthreateningly even after the first officer fired her taser at Mr. Byers and missed. *Id.* In short, there was no basis for Officer Painter to believe that Mr. Byers was a threat to either officer.

the allegations as true, the officers could not have reasonably believed that Mr. Byers posed an imminent threat.

Second, the Amended Complaint indicates that Mr. Byers did not prompt Officer Painter's deadly force through "some sort of furtive or threatening movement." *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022); Am. Compl. ¶ 53. And absent allegations demonstrating "threatening movement," the Fourth Circuit has plainly held that deadly force is unjustified. *Knibbs*, 30 F.4th at 225 (explaining that the presence of a weapon only justifies the use of deadly force if the suspect moves in a manner "signaling to the officer that the suspect intends to use it in a way that *imminently* threatens the safety of the office or another person." (emphasis added)). Accordingly, the allegations in the Amended Complaint, when viewed in the light most favorable to Plaintiffs, do not support an inference that Mr. Byers presented as an imminent threat.

Third and finally, it is clear from Plaintiffs' allegations that any risk posed by Mr. Byers disappeared once Mr. Byers began to run: his body turned away from the officers, such that he was no longer in the position to throw the hatchet at them. Am. Compl. ¶ 53. Yet, Officer Painter continued to shoot until Mr. Byers fell to the ground. *See id.*

By describing the nature of Mr. Byers's "weapon," the lack of threatening movement, and Mr. Byers's flight, Plaintiffs have adequately alleged that Officer Painter killed Mr. Byers despite lacking "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer[s] or to others." *Waterman*, 393 F.3d at 477; *Ashcroft*, 556 U.S. at 678. As a result, Plaintiffs have stated a constitutional violation by Officer Painter. The Court proceeds to the second prong of the qualified immunity analysis.

2. Clearly Established Right

Under the second prong of the qualified immunity analysis, law enforcement can only be sued for violations of rights that, at the moment of misconduct, were clearly established. *E.g.*,

*Pearson*, 555 U.S. at 232. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she is doing violates that right." *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2016). In other words, previous case law must have clearly condemned conduct like the facts at bar with a "high level of particularity." *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024). The key inquiry is whether "the law provided 'fair warning' that [the officer's] conduct was unconstitutional." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

While the question of whether a right is clearly established is often a difficult one, here, it is simple. On July 8, 2023—the moment of the alleged constitutional violation—Fourth Circuit law clearly established that a suspect's possession of a weapon "only justifies the use of deadly force if [the bearer] makes some sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that imminently threatens the safety of the office or another person." *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022) (surveying Fourth Circuit law on excessive force against an armed suspect).

The rule of *Knibbs* applies squarely to the facts alleged in the Amended Complaint: Mr. Byers was armed but made no "furtive or other threatening movement with the weapon." *Knibbs*, 30 F.4th at 225. Thus, there was no "signal" that Mr. Byers intended to harm the officers, so as to justify the use of deadly force. *Id.* Accordingly, by alleging that Officer Painter shot Mr. Byers without a justifying "signal," Plaintiffs state a clearly established constitutional violation upon Officer Painter's very first shot.

However, the allegations do not stop at the very first shot. As Plaintiffs describe it, Officer Painter continued to shoot as Mr. Byers turned and ran. Am. Compl. ¶ 53. Given that *Knibbs* condemns Officer Painter's first shot, it goes without saying that *Knibbs* and its underpinning body of law clearly condemn Officer Painter's subsequent shots, which were fired as Mr. Byers

11

continued to move away from the officers, and as he turned and ran away. Thus, the Amended Complaint adequately alleges that Officer Painter violated Mr. Byers's clearly established rights, and Officer Painter cannot avail himself of qualified immunity. Given the foregoing, Officer Painter's Motion to Dismiss will be denied with respect to Count III.

**B. Count V**

Count V alleges Negligence, Gross Negligence, and Willful and Wanton Negligence by Officer Painter under Virginia law. Am. Compl. ¶¶ 107–114. In his Motion, Officer Painter argues that he is partially immune from Count V and, to the extent the allegations survive the immunity challenge, that Plaintiffs fail to state a claim against him. The Court finds that Officer Painter is partly correct, insofar as Officer Painter is immune under Virginia law from ordinary negligence claims and Plaintiffs have failed to state a claim for gross negligence. Accordingly, the Court will dismiss the portions of Count V that proceed under a theory of either ordinary or gross negligence. The claim may proceed, however, under a theory of willful and wanton negligence.

<u>1. Immunity as to Ordinary Negligence Claims</u>

"Under Virginia law, ordinary negligence claims cannot lie against a law enforcement officer who was engaged in 'an essential governmental function involving the exercise of discretion and judgment' at the time of the act alleged to be negligent." *Savage v. Cnty. of Stafford*, 754 F. Supp. 2d 809, 817 (E.D. Va. 2010) (quoting *Glasco v. Ballard*, 452 S.E.2d 854, 856 (Va. 1995). In determining whether defendants are entitled to this genus of sovereign immunity, Virginia courts consider the following factors: "1) the nature of the function performed by the employee; 2) the extent of the state's interest and involvement in the function; 3) the degree of control and direction exercised by the state over the employee; and 4) whether the act complained of involved the use of judgment and discretion." *Messina v. Burden,* 321 S.E.2d 657, 663 (Va. 1984). However, this immunity extends only to ordinary negligence and does not shield officers

12

from liability for "acts that rise to the level of gross negligence." *Savage*, 754 F. Supp. 2d at 817 (citing *Colby v. Boyden*, 400 S.E.2 184, 187 (Va. 1991)).

Other courts in this district have previously held that this immunity applies to discretionary action taken by police officers while performing law enforcement functions. *Savage*, 754 F. Supp. at 817 (applying immunity to officer for conduct during an allegedly unlawful arrest); *Simpson v. Commonwealth*, 2016 WL 3923887, at *10 (E.D. Va. July 21, 2016). Here, the Court finds that the allegations of the Amended Complaint, even when viewed in Plaintiffs' favor, demonstrate that Officer Painter was engaged in such a discretionary law enforcement function when he shot Mr. Byers.

First, Officer Painter's conduct took place while he was investigating a 911 call—a paradigmatic law enforcement function. Second, the manner in which an officer approaches an armed suspect is "not ministerial . . . . Rather, [it] require[s] him to make 'prompt, original, and crucial decisions' in a delicate and stressful situation." *Savage*, 754 F. Supp. 2d at 817 (quoting *Colby*, 400 S.E.2d at 187). Thus, Count V falls within the purview of Virginia sovereign immunity and Officer Painter is shielded from Plaintiffs' ordinary negligence claim contained therein. *Glasco*, 452 S.E.2d at 856. The Court will dismiss the portion of Count V that relies on a theory of ordinary negligence.

2. Gross Negligence, Willful and Wanton Negligence

Officer Painter next contends that the Court must dismiss the remainder of Count V because he exercised "some degree of care." Mem. Supp. Mot. Dismiss 28–29. Thus, Officer Painter concludes, Plaintiffs have failed to state a claim against him. Officer Painter's minimal diligence shields him from Plaintiffs' allegation of gross negligence; however, the Court's foregoing qualified immunity analysis also reveals that Plaintiffs have stated a claim of willful and wanton conduct by Officer Painter. The Court explains both conclusions in turn below.

*a. Gross negligence*

Under Virginia law, "gross negligence" is a degree of negligence "showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 916 (Va. 2004). Virginia's standard for gross negligence is thus one of indifference, not inadequacy. *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008); *Cantrell v. McCoy*, 553 F. Supp. 3d 295, 306 (W.D. Va. 2021). This "uniquely high standard" bars gross negligence claims where the allegations or evidence reveal that the defendant exercised at least "some degree of care." *Cantrell*, 553 F. Supp. 3d at 306 (citing *Elliott v. Carter*, 791 S.E.2d 730 (Va. 2016)); *see Chapman v. City of Virginia Beach*, 475 S.E.2d 798, 801 (Va. 1996) (describing gross negligence as "a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care" (citations and internal quotations marks omitted)).

Beyond the duty of reasonable care required of all individuals, Officer Painter bore the duty to not curtail Mr. Byers's Fourth Amendment rights. Officer Painter contends that he exercised "some degree of care" as to Mr. Byers's rights by, among other things, directing the accompanying officer to tase Mr. Byers. Mem. Supp. Mot. Dismiss 29; *see* Am. Compl. ¶ 53 ("at the encouragement of Officer Painter, the first officer shot a taser at ["Mr. Byers]"). Accordingly, Officer Painter argues that Plaintiffs have failed to state a claim for gross negligence.

The Court agrees. Notwithstanding the clearly violative nature of the allegations against Officer Painter, the Amended Complaint does not support an inference that Officer Painter totally forewent *all* forms of care. Indeed, the Amended Complaint states that Officer Painter encouraged his accompanying officer to attempt lesser force before he began to shoot. Am. Compl. ¶ 53. While minimal, this encouragement constitutes at least "slight diligence." *Chapman*, 475 S.E.2d

14

at 801.  Accordingly, Plaintiffs have not stated a claim of gross negligence against Officer Painter. The Court will thus dismiss that aspect of Count V.

### b. Willful and Wanton Negligence

Whereas "the difference between ordinary negligence and gross negligence is one of degree," the difference between "any form of negligence and . . . willful and wanton conduct . . . is a matter of kind."  *Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005).  A defendant acts willfully and wantonly when he "act[s] consciously in disregard of another person's rights or act[s] with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan*, 603 S.E.2d at 916.  An actor guilty of willful and wanton conduct must intend his act but need not intend the resulting harm.  *Green*, 608 S.E.2d at 918.

Officer Painter contends that, because he exercised some care, the Plaintiffs have again failed to state a claim of willful and wanton conduct.  Mem. Supp. Mot. Dismiss 30.  Here, however, Officer Painter's minimal diligence does not carry the day.

The Court's foregoing qualified immunity analysis also reveals that Plaintiffs have adequately alleged willful and wanton conduct by Officer Painter.  As described above, a finding that a right was clearly established also stands for the proposition that the "the law provided 'fair warning' that [the officer's] conduct was unconstitutional."  *Booker*, 855 F.3d at 538 (quoting *Hope*, 536 U.S. at 741).  Thus, an officer who violates a clearly established right has committed a constitutional violation "every reasonable officer" understands is violative.  *Adams*, 884 F.3d at 226.  In other words, an officer who violates a clearly established right has acted in conscious disregard of the victim's constitutional rights.  *Id.*; *Cowan*, 603 S.E.2d at 916 (describing willful and wanton conduct as "action consciously in disregard of another person's rights").

The Court has already concluded that the Amended Complaint supports an inference that Officer Painter violated Mr. Byers's clearly established rights. Thus, the Amended Complaint also plausibly states that Officer Painter proceeded in the face of a "fair warning" that his particular conduct—using deadly force without adequate provocation—would violate Mr. Byers's rights. *Booker*, 855 F.3d at 538; *Hope*, 536 U.S. at 741; *Adams*, 884 F.3d at 226. Accordingly, Plaintiffs adequately allege that Officer Painter behaved in conscious disregard of Mr. Byers's rights, and therefore, he acted willfully and wantonly. Thus, to the extent it proceeds under a theory of willful and wanton conduct, Count V survives Officer Painter's Motion to Dismiss.

## V. CONCLUSION

Plaintiffs have adequately stated a claim for Deprivation of Civil Rights under 42 U.S.C. § 1983 and a claim for willful and wanton conduct by Officer Painter. Plaintiffs have failed to state a claim, however, for ordinary or gross negligence. Thus, Defendant Painter's Motion to Dismiss (ECF No. 90) will be granted in part and denied in part. Count III may wholly proceed against Officer Painter. Count V, however, may only proceed under a theory of willful and wanton conduct. The portions of Count V asserting claims of ordinary and gross negligence will be dismissed.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: January 13, 2025
Richmond, Virginia