IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| MARGARET P. BYERS, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23CV801 (RCY) |
| | ) | |
| CITY OF RICHMOND, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This action stems from the fatal shooting of Charles M. Byers by Chesterfield County Police Officer Gordon J. Painter. The matter is before the Court on Defendant Chesterfield County's Motion to Dismiss. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion to Dismiss in full.

**I. FACTUAL BACKGROUND[1]**

This action is brought by Plaintiffs Margaret P. Byers and Michael C. Byers as co-administrators of their son Charles M. Byers's ("Mr. Byers") estate. Am Compl. ¶ 10, ECF No. 81. Plaintiffs advance two counts against Defendant Chesterfield County ("Chesterfield County" or "the County") in connection with their son's death: Excessive Force and Deprivation of Civil Rights pursuant to 42 U.S.C. § 1983 (Count Three); and Wrongful Death, Negligence, Gross

---

[1] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or the plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Amended Complaint, including the documents attached thereto, as follows.

Negligence, and/or Willful and Wanton Negligence pursuant to Virginia law (Count Five).  *Id.* ¶¶ 84–96, 107–114.  The facts relevant to these claims are as follows.

### A.  The Lead-Up to Mr. Byers's Encounter with Chesterfield County Police[2]

Mr. Byers's struggle with various mental health issues started in 1999.  *Id.* ¶ 31.  In or about 2008, he was diagnosed with schizoaffective disorder.  *Id.* ¶ 32.  His condition was managed for several years with a combination of medications, therapy, and voluntary hospitalizations.  *Id.* ¶ 33–34.  However, in or about 2023, Mr. Byers's condition began to worsen, and he told his parents that he needed help.  *Id.* ¶ 35.  Plaintiffs observed that Mr. Byers was particularly "anxious, confused, and delusional—often having conversations with someone who was not there, sometimes mumbling and laughing to himself;" he was clearly "struggling with reality" and "desperately needed help" with his mental illness.  *Id.*

On July 5, 2023, Mr. Byers's mother drove him to Chippenham Hospital, where he was accepted into intake for admittance to the mental health unit at Tucker Pavilion.  *Id.* ¶ 36.  After receiving assurances that Mr. Byers would be assigned a "sitter" to prevent him from wandering within or beyond the hospital pending admittance, as he had done in the past, and that she would be contacted if there were any issues, Mr. Byers's mother departed.  *Id.*  Unfortunately, Mr. Byers was not supervised in the promised manner, which led to him wandering the halls of the hospital and eventually being forcibly arrested and removed from Tucker Pavilion by Richmond Police Department ("RPD") officers present as "extra duty" security.  *Id.* ¶¶ 37–49.  Upon being taken to

---

[2] The Court has previously set out a more detailed recitation of the facts concerning Mr. Byers's medical history, his time at Tucker Pavilion, and his arrest and release by Richmond City Police.  *See* Mem. Op., *Byers v. City of Richmond*, 2024 WL 3938830 (E.D. Va. Aug 26, 2024), ECF No. 85 (CJW Motion to Dismiss); Mem. Op., *Byers v. City of Richmond*, 2024 WL 4267186 (Sept. 23, 2024), ECF No. 93 (City of Richmond Motion to Dismiss); Mem. Op., *Byers v. City of Richmond*, 2024 WL 4295232 (Sept. 25, 2024), ECF No. 99 (Gibson Motion to Dismiss).  Those facts, while helpful in understanding the full chain of events involved in this suit, are not essential to resolving the present motion, and so the Court dispenses with reciting them in full yet again here.

Richmond City Jail, Mr. Byers appeared before a magistrate, who directed that Mr. Byers be released on his own recognizance.  *Id.* ¶ 50.

**B.  Mr. Byers's Release and Fatal Encounter with Officer Painter**

Mr. Byers was released from the City of Richmond jail during the evening hours of July 6, 2023.  *Id.* ¶ 51.  While still experiencing paranoia and delusions, Mr. Byers proceeded to walk the fourteen-mile distance from the jail to his neighborhood in Chesterfield.  *Id.*  Still limited by his mental state, Mr. Byers was unable to precisely locate his home and instead "wandered around his neighborhood and adjoining neighborhoods searching for his home" for several hours.  *Id.*

At 12:49 p.m., on July 8, 2023—nearly two days after Mr. Byers began to walk home— the Chesterfield County Police Department ("CCPD") received a 911 call reporting that Mr. Byers had attempted to enter the caller's house.  *Id.* ¶ 52.  The caller further reported that she had asked Mr. Byers what he was doing, to which Mr. Byers responded:  "I'm sorry, I thought this was my parents' house."  *Id.*  Then, the caller observed Mr. Byers attempt to open a neighbor's door and enter another's garage.  *Id.*  While in the garage, Mr. Byers picked up a small hatchet, which he was holding when CCPD officers—Defendant Officer Gordon J. Painter and another unnamed officer—arrived at the scene.  *Id.*

The unnamed officer was the first to arrive; she "pulled up and immediately drew her gun and pointed it at [Mr. Byers]."  *Id.* ¶ 53.  Officer Painter did the same when he arrived, "startl[ing] Mr. Byers."  *Id.*  Mr. Byers immediately began backing away from the two officers, "who had their guns drawn on him and were yelling at him to put down the hatchet."  *Id.*  At Officer Painter's direction, the first officer fired her taser at Mr. Byers, "but apparently missed."  *Id.*  As emphasized by Plaintiffs, Officer Painter never attempted to "speak to [Mr. Byers] in a . . . nonthreatening way or assess his medical condition or mental or psychological state," *id.* ¶ 54, use any "less-lethal

3

force to gain control of the situation," *id.* ¶ 55, or use any "de-escalation techniques [or] warn [Mr. Byers] that he would be shot," *id*. ¶ 56.

While the first officer struggled to discharge a second taser cartridge, Officer Painter fired his service weapon, a 9mm handgun, at Mr. Byers. *Id*. ¶ 53. Notably, when Officer Painter fired his first shot, Mr. Byers was "at least 25 feet away from Officer Painter . . . [with his] head . . . turned away." *Id.* From the allegations in the Amended Complaint and the body-worn camera footage attached as Exhibit H, it is unclear what, if anything, caused Officer Painter to shoot at that moment; at the time, Mr. Byers was continuing to back away and had not made any threatening motions. *See generally id.* ¶¶ 52–57; Am. Compl. Ex. H; accord *Byers v. Painter*, 173 F.4th 155, 163 (4th Cir. 2026) (affirming the Court's denial of Officer Painter's Motion to Dismiss and finding that "there is no allegation in the complaint or indication in the video that Byers'[s] conduct signaled to the officers that he intended to use the hatchet in a way that 'imminently threaten[ed] the safety of the officer or another person.'" (quoting *Aleman v. City of Charlotte*, 80 F.4th 264, 286–87 (4th Cir. 2023))). After Officer Painter fired three shots, Mr. Byers turned and ran away from Officer Painter. Am. Compl. ¶ 53. Yet, Officer Painter continued to shoot, hitting Mr. Byers in the back three or four times. *Id.* Mr. Byers fell to the ground, "dying and gasping for his last breaths." *Id*. Despite Mr. Byers being mortally wounded and entirely incapacitated, Officer Painter and the accompanying officer proceeded to "aggressively handcuff Mr. Byers." *Id*.

## C. Chesterfield County's Post-Shooting Conduct and Knowledge of Officer Painter's Propensity for Excessive Force

Soon after Mr. Byers's death, Chesterfield County investigated the incident. *See id.* ¶ 58. In its released investigative report and subsequent responses to media requests, the County claimed that "Byers kept advancing on [o]fficers, with a weapon in his hand," and that "Officer Painter [shot Mr. Byers] *to stop the subject's advance*." *Id.* (emphasis in original). Plaintiffs allege that these demonstrably false statements "were known to be untrue by the [County] when the

4

statements were made, as the entire incident was recorded on the officers' [body-worn cameras]." *Id.* Chesterfield County refused to release the video of the shooting to the public.[3] *Id.*

During the investigation, the County hired William J. Lewinski, founder of "Force Science," and well-known proponent of "'junk-science' or 'pseudoscience'" to justify the shooting of Mr. Byers. *Id.* ¶ 59. Based on information provided by the County,[4] Force Science produced a report in support of Officer Painter's shooting, finding that it had been justified. *See id.* ¶¶ 59, 62. Allegedly relying on the Force Science report, the Chesterfield Commonwealth's Attorney chose not to prosecute Officer Painter for shooting Mr. Byers. *Id.* ¶ 59.

Plaintiffs allege that CCPD went to such "great lengths to cover up the unlawful shooting of [Mr. Byers]" because CCPD knew that Officer Painter had a history of using excessive force. *Id.* ¶ 60. The Amended Complaint explains that this knowledge stems from *Wilson v. Painter*, Civil Case No. 3:20-CV-645-DJN, a 2020 action filed against Officer Painter. *Id.* ¶ 61. In *Wilson*, the plaintiff asserted that Officer Painter violated his Fourth Amendment rights when Officer Painter struck the plaintiff in the face during a traffic stop. *Id.* Specifically, the *Wilson* plaintiff asserted that Officer Painter struck him with a closed fist while the plaintiff sat motionless and kept his hands visible . . . and did not undertake an[y] threatening movements." *Id.* Denying a motion to dismiss, the district court in *Wilson* found that "a reasonable officer would understand" that Officer Painter's alleged conduct "constitutes excessive force under the[se] facts." *Id.* ¶ 61. The Fourth Circuit affirmed the district court's decision, and the matter settled out of court. *Id.* ¶¶

---

[3] It was only after this litigation commenced that Plaintiffs were able to obtain the relevant body worn camera footage, which has now been incorporated into the Amended Complaint by way of Exhibit H. *See, e.g.*, Mot. Quash/Mot. Prot. Order, ECF No. 48 (filed by CCPD upon its receipt of a third-party subpoena; Chesterfield County was not yet a defendant in this action); Pls.' Mem. Re: Mot. Quash/Mot. Prot. Order, ECF No. 64 (describing Plaintiffs' efforts to obtain the footage); Joint Mot. Leave to File Redacted Body Worn Camera Footage, ECF No. 68 (indicating that the parties had obtained the footage).

[4] Plaintiffs allege that CCPD "intentionally withheld information regarding Officer[] Painter's propensity to use excessive force" from Force Science, presumably to ensure a positive report. Am. Compl. ¶ 62.

61–62 (citing *Wilson v. Painter*, 2020 WL 7497801 (E.D. Va. Dec. 21, 2020), *aff'd* 2021 WL 5851070 (4th Cir. 2021)). Finally, Plaintiffs allege that, "according to the allegations in [*Wilson*], . . . there were multiple instances in which Officer Painter used excessive force against citizens" prior to even that action. *Id.* ¶ 62.

In sum, based on *Wilson*, the additional "multiple instances" of excessive force by Officer Painter, and the County's investigative report, the Amended Complaint alleges that CCPD knew that Officer Painter had a propensity to use excessive force but failed to prevent future instances of such conduct. *Id.* ¶¶ 58–62.

## II.  RELEVANT PROCEDURAL HISTORY

Plaintiffs filed this action on November 22, 2023. Compl., ECF No. 1. On July 10, 2024, Plaintiffs filed an Amended Complaint, which added Chesterfield County as a defendant. Am. Compl. On September 9, 2024, the County filed the instant Motion to Dismiss. Mot. Dismiss, ECF No. 88; Mem. Supp. Mot. Dismiss ("Mem. Supp."), ECF No. 89. On September 25, 2024, Plaintiffs filed their Memorandum in Response ("Response") thereto. Pls.' Resp., ECF No. 101. On September 30, 2024, Defendant filed its Reply Memorandum in Support of its Motion to Dismiss ("Reply"). Reply, ECF No. 105.

While this Motion was pending, co-defendant Officer Painter appealed this Court's in-part denial of his Motion to Dismiss; the Court accordingly stayed the remainder of the action pending the Fourth Circuit's adjudication of the appeal. On April 17, 2026, the Fourth Circuit affirmed the Court's decision in a published opinion. *Byers v. Painter*, 173 F.4th 155 (4th Cir. 2026). The Fourth Circuit issued its mandate on May 26, 2026, ECF No. 161, and the matter returned to this Court's active docket. This opinion follows accordingly.

6

### III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic

recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. DISCUSSION

Plaintiffs name Defendant Chesterfield County in Counts Three and Five of the Amended Complaint. Am. Compl. ¶¶ 84–96, 107–114. With respect to Count Three, a claim pursuant to 42 U.S.C. § 1983, Plaintiffs assert that the County is directly liable for the acts of Officer Painter pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Id.* ¶¶ 18, 84–96. With respect to Count Five, a Virginia state law claim for wrongful death by negligence, gross negligence, and willful and wanton negligence, Plaintiffs assert that the County is liable for the actions of its police officers pursuant to the state common law principle of *respondeat superior*. *Id.* ¶¶ 18, 107–114.

In the instant Motion, the County argues that Plaintiffs' Amended Complaint wholly fails to state a claim against it and accordingly asks the Court to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the County argues that Count Three fails against it because Plaintiffs' allegations do not establish *Monell* liability and that Count Five fails because it is barred by sovereign immunity. *See generally* Mem. Supp. The Court agrees on both counts and will grant the Motion to Dismiss.

### A. Count Three

"42 U.S.C. § 1983 provides an avenue for plaintiffs to file suit against any person who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Johnson v. Baltimore City*, 163 F.4th 808, 821 (4th Cir. 2026) (quoting 42 U.S.C. § 1983) (citing *Filarsky v. Delia*, 566 U.S. 377 (2012)). "In *Monell v. Department of Social Services*, the Supreme Court determined that 'municipalities and other local government units' are 'persons' within the

meaning of § 1983 and thus amendable to suit under the statute." *Id.* (quoting *Monell*, 436 U.S. 658, 690 (1978)) (internal citation omitted).

"To hold a municipality liable for a constitutional violation pursuant to *Monell*, a plaintiff must establish 'the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.'" *Id.* at 821–22 (quoting *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023)). A plaintiff cannot establish *Monell* liability based purely on the fact that a municipality's agent committed a constitutional violation—in other words, municipalities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, liability attaches only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell*, 436 U.S. at 694. Thus, whether Plaintiffs have stated a claim against the County based on a theory of *Monell* liability turns on whether Plaintiffs have plausibly alleged that a policy or custom of the County gave rise to the constitutional violation at issue here—Officer Painter's use of excessive force against Mr. Byers.

The Fourth Circuit has identified four avenues by which a § 1983 plaintiff may demonstrate the existence of a *Monell* "policy or custom":

> (1) [T]hrough an express policy, such as such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Johnson*, 163 F.4th at 822 (alterations in original) (quoting *Howard*, 68 F.4th at 952). In opposition to the Motion to Dismiss, Plaintiffs argue that their Amended Complaint states a *Monell* claim against Chesterfield County based on the third and/or fourth avenues of *Monell* liability. Pls.' Resp. 3–7 (arguing under avenue three that the County failed to properly train and supervise

9

Officer Painter, and under avenue four that the County was aware of and thus condoned Painter's pattern of unconstitutional behavior).  The Court agrees with the County in that the facts alleged in the Amended Complaint are insufficient to sustain Plaintiffs' theories of liability.

### 1. Failure to Train

The Court first finds that the Amended Complaint does not plausibly allege facts to support a failure-to-train theory of liability against the County.  To successfully plead *Monell* liability based on a failure to train theory, a plaintiff must allege: (1) a violation of the plaintiff's constitutional rights by the defendant's subordinates; (2) inadequate training that reflects a deliberate indifference to or "reckless disregard for the constitutional rights of persons within police force jurisdiction;" and (3) a causal nexus between the allegedly inadequate training policy and the constitutionally violative conduct.  *Spell v. McDaniel*, 824 F.2d 1380, 1388, 1390 (4th Cir. 1987); *see also City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989); *Brown v. Mitchell*, 308 F. Supp. 2d 682, 702 (E.D. Va. 2004).

Critically, to succeed on a failure to train theory, a plaintiff must allege a specific deficiency in the defendant's training program that caused the instant constitutional violation.  *Spell*, 824 F.2d at 1390 ("a specific deficiency rather than general laxness or ineffectiveness in training [must] be shown"); *see also Baker v. Stover*, 2024 WL 4122036, at *5 (E.D. Va. Sept. 6, 2024) (holding that the plaintiff failed to allege a failure-to-train theory where the plaintiff "fail[ed] to identify any specific deficiency in the training regarding [the alleged] varied scenarios, nor [did] he address any aspect of [the municipality's] training program at all").  Indeed, the Supreme Court has held that, in the failure to train context, "an unjustified shooting by a police officer cannot, without more, be thought to result from official policy." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985) (plurality opinion)).  Here, the requisite "more" is missing.

The Amended Complaint does not reference Chesterfield County's police training program, much less allege a particular deficiency in such training that gave rise to the shooting of Mr. Byers. *See generally* Am. Compl. ("training" references appearing only with respect to the City of Richmond in conjunction with the City's practice of permitting off-duty officers to work as security at Johnston Willis Hospital's Tucker Pavilion). Nevertheless, Plaintiffs baldly contend that training deficiencies are "obviously" represented by Officer Painter's conduct. *See* Pls.' Resp. 6 ("Chesterfield County's and Officer Painter's ignorance obviously represents the training that Chesterfield County provides (or fails to provide) to its officers."). Plaintiffs' argument is unavailing and cannot overcome the Amended Complaint's silence with respect to pleading deficient training. *Baker*, 2024 WL 4122036, at \*5; *accord Jackson v. Town of Farmville*, 2023 U.S. Dist. LEXIS 99686, at \*24–25 (E.D. Va. June 7, 2023) ("*Moody* [*v. City of Newport News*, 93 F. Supp. 3d 516 (E.D. Va. 2015)] is inapposite because Moody plainly alleged that the municipality imposed *no* training whatsoever with respect to the use of deadly force. Here, Jackson's allegations do not, even read favorably, plausibly allege that no training as to excessive force occurs." (emphasis in original)). Accordingly, Plaintiffs have failed to state a § 1983 *Monell* claim against the County pursuant to a failure to train theory.

   2. Failure to Supervise

Plaintiffs also endeavor to assert a failure to supervise theory of *Monell* liability, Pls.' Resp. 3, 6, but this avenue is equally unavailing, and the Court need not expend much ink on the argument. It is well established in the *Monell* sphere that supervisory liability may only lie against natural persons—not entities such as Chesterfield County. *Pratt-Miller v. Arthur*, 701 F. App'x 191, 193 (4th Cir. 2017) (considering supervisory liability against an official separately from municipal liability against an entity); *accord Gutierrez-Rodriguez v. Catagena*, 882 F.2d 553, 566–67 (1st Cir. 1989) (distinguishing *Monell* liability against a municipality from supervisory liability,

11

which is "the standard for imposing liability . . . upon individual actors"). Indeed, the case Plaintiffs rely upon in this section of their brief involved an analysis of *Monell* liability as to an individual. *See* Pls.' Resp. 6 (quoting *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999)). The Court accordingly concludes that Plaintiffs do not state a claim for *Monell* liability by way of this avenue, either.

### 3. Condonation

Turning to the last of Plaintiffs' *Monell* arguments, the Court also finds that the Amended Complaint does not allege facts to support a condonation theory of *Monell* liability against the County. The condonation theory arises from courts' recognition that, "[w]ithout having been directly authorized . . . or inadequately trained in specific ways by responsible municipal policymakers, police officers . . . may fall into patterns of unconstitutional conduct," *Spell*, 824 F.2d at 1390, and if such conduct is sufficiently persistent and widespread, it may be fairly said that the municipality has knowledge of and thus has condoned the relevant conduct, *id*. at 1387 (citing *Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). A successful condonation claim must allege a pattern of unconstitutional conduct so "persistent and widespread . . . [that it] may be attributable to a municipality" as its custom. *Id.* As such, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability." *Owens v. Baltimore City State's Att'y's Off.*, 767 F.3d 379, 403 (4th Cir. 2014). A plaintiff successfully stating a claim under a condonation theory must allege: (1) a widespread pattern of unconstitutional conduct; (2) "actual or constructive knowledge of its existence by responsible policymakers;" and (3) a causal nexus between the failure to correct and the specific alleged violation. *Spell*, 824 F.2d at 1391; *Johnson*, 163 F.4th at 822 (quoting *Owens*, 767 F.3d at 402–03).

The issue in this case turns on whether Officer Painter's conduct, alone, can constitute a "widespread pattern." The County argues that Officer Painter's individual misconduct cannot

12

constitute a widespread pattern attributable to the County as a whole.  Mem. Supp. Mot. Dismiss 3–4, 7–10.  Plaintiffs attempt to argue—without any support for the proposition—that "a showing of a widespread pattern is only necessary to show that Chesterfield County had actual or constructive knowledge that leads to the inference that [the County] is deliberately indifferent to Officer Painter's unconstitutional behavior," and that, "[i]n this case, . . . it should be obvious that Chesterfield County possessed actual knowledge of Officer Painter's unconstitutional behavior." Pls.' Resp. 4.  The Court is not persuaded by Plaintiffs' efforts to re-write the well-established elements of a condonation theory claim to dispense with the "widespread pattern" requirement. And when it properly measures Plaintiffs' allegations against this requirement, the Court concludes that the Amended Complaint falls short of stating a *Monell* claim under a condonation theory.

Plaintiffs' allegations to support their condonation theory amount to the following:  at least two years before the shooting of Mr. Byers, Officer Painter was sued civilly for another instance of on-the-job excessive force, and the allegations in that case point to additional prior instances of excessive force and/or other unconstitutional behavior.  Am. Compl. ¶¶ 60–62 (citing *Wilson v. Painter*, Case No. 3:20-cv-645 (DJN) (E.D. Va. 2020).[5]  Unfortunately, this does not rise to the level of a "persistent and widespread . . . practice[]" that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Krss & Co.*, 398 U.S. 144, 167–168 (1970)); *see also id.* at 691 n.56 (emphasizing that the custom and usage of which the Supreme Court was concerned was "[s]ettled state practice[s]" and

---

[5] Plaintiffs also allege that the County covered up the facts of the July 8, 2023 shooting of Mr. Byers, but those after-the-fact actions and statements cannot plausibly have *caused* the shooting of Mr. Byers, and so these allegations are inapposite to the present claim.  *See Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023) ("[T]he City Manager's post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation.").  While such post-shooting behavior might very well appear as condonation (in the dictionary sense) of the earlier, specific constitutional violation giving rise to this action, that is not the spirit of the so-called condonation theory of *Monell* liability, which looks to whether certain official practices have been condoned *prior to* the instant constitutional violation, such that the condonation can fairly be said to have proximately caused the violation.  *Spell*, 824 F.2d at 1398.

13

"[d]eeply embedded traditional ways of carrying out state policy"). To hold the County liable solely for the actions of a single individual—even if that individual acted unlawfully multiple times previously—absent a broader showing of policy, custom, or culture, does not satisfy the custom or practice standard. *Cf. Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991) (finding sufficient to sustain a *Monell* claim based on a widespread pattern of unconstitutional police conduct the plaintiff-appellant's citation to "numerous particular incidents of excessive force" *plus* statistics suggesting suppression of citizen complaints regarding excessive force, practices that suggest to officers that wrongdoing will not be documented, and other circumstantial evidence of a "circle the tents" approach to police brutality complaints); *McDowell v. Grimes*, 2018 WL 3756727, *5 (D. Md. Aug. 7, 2018) (denying 12(b)(6) motion related to *Monell* condonation claim where the plaintiff alleged that "excessive force, including but not limited to previous unrelated incidents involving Defendant Officer Grimes, was being used with sufficient regularity by Baltimore City police officers" (not just the defendant officer) *and* that the defendant officer's and others' known non-compliance with policies regarding use of force were tolerated, permitted, acquiesced in and otherwise unchecked); *Doe v. City of San Diego*, 35 F. Supp. 3d 1233, 1240 (S.D. Cal. 2014) (finding facts sufficient to create a triable issue on *Monell*/condonation claim where the plaintiff presented evidence regarding the defendant's employment tenure, "during which numerous bad acts went undocumented and largely undisciplined" *and* testimony from former police officers and experts regarding the "code of silence" within the department).

Accordingly, the Court concludes that the Amended Complaint does not support an inference that Chesterfield County police officers have, collectively, "fall[en] into patterns of unconstitutional conduct." *Spell*, 824 F.2d at 1390.[6] As such, Plaintiffs have failed to state a

---

[6] The Court further notes that, even if it were to find that Painter's individual pattern of conduct was sufficient to support the widespread pattern aspect of Plaintiffs' theory of custom by condonation, *e.g.*, *Johnson v. Holmes*, 204 F. Supp. 3d 880, 891–92 (W.D. Va. 2016) (noting that alleging a *Monell* condonation claim should not be a herculean

14

*Monell* claim under a condonation theory.  Finding no other basis for holding Chesterfield County liable for Officer Painter's conduct but further finding that the pleading deficiencies noted above might plausibly be cured, the Court will grant the County's Motion as to Count III but dismiss the count without prejudice.

**B. Sovereign Immunity**

Finally, the County asserts that it is absolutely immune from liability with respect to Count Five.  Mem. Supp. Mot. Dismiss 14–15.  Plaintiffs concede as much.  Resp. 7.  Little more need be said.  Accordingly, the Court will dismiss Count Five as to Chesterfield County, with prejudice.

## V. CONCLUSION

For the reasons described above, the Court finds that the Amended Complaint fails to articulate a *Monell* claim against the County.  Thus, the Court will grant the Motion as to Count Three.  Additionally, because the County is immune to Virginia tort claims, the Court will likewise grant the Motion as to Count Five.

An appropriate Order shall issue.

/s/ _RCY_

Roderick C. Young
United States District Judge

Date: June 17, 2026
Richmond, Virginia

---

task, and that allegations that there had been repeated, prior citizen complaints regarding the rights-offending police officer in question were sufficient to state a *Monell* claim against the defendant county), Plaintiffs' claim would nevertheless falter on the causation prong.  Specifically, the Fourth Circuit has dictated that "failure to correct the known practices must be such as to make the specific violation 'almost bound to happen, sooner or later,' rather than merely 'likely to happen in the long run.'" *Spell*, 824 F.2d at 1391 (quoting *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).  Here, based on the specifics of Officer Painter's prior alleged instances of excessive force, the Court cannot say that the facts plausibly suggest that the County's failure to previously take action against Painter rendered it "almost bound to happen" that Painter would graduate from beating a detainee to shooting a retreating suspect who posed no imminent threat, i.e., the specific violation that is alleged to have occurred here.  *Cf. Johnson*, 204 F. Supp. 3d at 883–84, 891–92 (prior complaints against defendant officer involved the same conduct as gave rise to the instant suit).

15